COMMONWEALTH of Pennsylvania, Appellee

v.

Jeffrey Wayne BAKER, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 7, 2010.

Filed June 27, 2011.

Charles P. Mackin, Jr., Carlisle, for appellant. (Brief Submitted).

Matthew P. Smith, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

BEFORE: STEVENS, SHOGAN, and MUNDY, JJ.

OPINION BY STEVENS, J.:

Appellant, Jeffrey Wayne Baker, appeals from the imposition of a mandatory minimum sentence following his second conviction for possession of child pornography, and challenges his designation as a sexually violent predator. We affirm his judgment of sentence and find that he was properly determined to be a sexually violent predator.

Pertinent to the sentence currently under review, Baker was originally charged with possession of child pornography in

October 2001. He entered into a negotiated guilty plea to violating 18 Pa.C.S. § 6312(d)(1), and was sentenced to 60 months intermediate punishment, with credit for time served. Baker completed this sentence on September 1, 2006, but by December 23, 2006, less than four months later, he was again the subject of scrutiny after police received a cyber-tip that he was sending and receiving images of child pornography by computer. A search warrant was subsequently issued for computers and related items located in the residence Baker shared with his parents, and during the execution of that warrant on February 6, 2007, Baker made incriminating statements to police. Although he was not arrested at the time, the evidence seized as the result of the search warrant prompted the filing of a criminal complaint against Baker on March 9, 2007.

Prior to trial, Baker filed a motion to suppress the evidence seized as well as the statements he made to police during the execution of the search warrant, and a hearing was held before the Honorable J. Wesley Oler, Jr., on January 2, 2008. In support of suppression of the evidence, Baker argued that the affidavit of probable cause supporting the search warrant was stale, lacked specificity, and contained a material misstatement, and also asserted that his statements should be suppressed because he was in custody at the time they were made, but had not been issued *Miranda* warnings.[1] N.T. 1/2/08 at 4–5, 103. Baker's suppression motion was denied by Judge Oler on March 25, 2008.

A jury trial presided over by the Honorable M.L. Ebert, Jr. commenced on July 14, 2008. At the conclusion of the presentation of evidence and testimony, Baker requested that Judge Ebert give Pennsylvania Standard Jury Instruction 3.04(d), which, in pertinent part, would have directed the jury that "in determining [the voluntariness of Baker's statements] you should also consider whether there was any violation of [*Miranda*]." N.T. 7/15/08 at 193–195, 200. Judge Ebert denied the request. *Id.* at 194–195, 200. Based on the evidence presented to it, the jury then convicted Baker of 29 counts of sexual abuse of children, pursuant to 18 Pa.C.S § 6312(d)(1),[2] and one count of criminal use of a communication facility, pursuant to 18 Pa.C.S. § 7512.[3]

Following Baker's convictions, a hearing before Judge Ebert was held on April 20, 2009, at the conclusion of which Baker was

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (a defendant subject to custodial interrogation must be advised of his or her constitutional right to remain silent and his or her right to a lawyer in clear and unequivocal language); *Commonwealth v. Johnson,* 373 Pa.Super. 312, 541 A.2d 332, 336 (1988) (a person must be given *Miranda* warnings prior to custodial interrogation by police).

2. Section 6312(d)(1), at the time Baker was charged and convicted, directed that "[a]ny person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense." 18 Pa.C.S.A. § 6312(d)(1). The statute has since been amended, effective September 14, 2009, to add "intentionally views" to the proscribed activity. See 18 Pa.C.S.A. § 6312(d)(1) (2009) ("Any person who intentionally views or knowingly possesses or controls" child pornography commits an offense.).

3. Section 7512 states that "[a] person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title ...," and specifies that "[e]very instance where the communication facility is utilized constitutes a separate offense under this section." 18 Pa.C.S.A. § 7512.

determined to be a sexually violent predator (SVP) for the purposes of 42 Pa.C.S. §§ 9791–9799.9 (Megan's Law). Baker later orally objected to this determination during his sentencing hearing, which was conducted on May 12, 2009.[4] N.T. 5/12/09 at 8. He also challenged the constitutionality of 42 Pa.C.S. § 9718.2,[5] under which he was facing a mandatory minimum sentence as the result of his 2001 offense. N.T. 5/12/09 at 9. Nonetheless, on May 15, 2009, the lower court imposed upon Baker concurrent mandatory minimum 25 to 50 year terms of imprisonment for each of the 29 convictions for Sexual Abuse of Children. Order filed 5/15/09. Additionally, Baker was ordered to submit to DNA testing and to undergo lifetime Megan's Law registration. *Id.* With regard to his conviction for Criminal Use of a Communication Facility, Baker received a concurrent standard range sentence of 1 to 7 years' imprisonment. *Id.*

On May 20, 2009, the Cumberland County Public Defenders Office filed post-sentence motions on Baker's behalf, indicating that a public defender had been appointed to represent Baker immediately following his sentencing, and did not have adequate information "regarding sentencing considerations, trial errors, or motions in order to set forth any motions with specificity." Post–Sentence Motion filed 5/20/09. The motion did indicate, however, that it sought (1) modification of Baker's sentence for reasons to be set forth with greater specificity once counsel had the opportunity to review transcripts and presentence investigations, (2) a new trial on the ground that the verdict was against the weight of the evidence, and (3) dismissal of the charges on the ground that the verdict was unsupported by the evidence presented. *Id.* Baker's counsel was given 45 days from the filing of transcripts in which to

4. Although Pennsylvania Rule of Criminal Procedure 720 directs that post-sentence motions requesting relief from the trial court be in writing, the rule also provides that "issues raised before or during trial shall be deemed preserved for appeal whether or not the defendant elects to file a post-sentence motion on those issues." Pa.R.Crim.P. 720(A), (B)(1)(c). Weight of the evidence claims are the exception. Pa.R.Crim.P. 607; *Commonwealth v. Bond*, 604 Pa. 1, 16–17, 985 A.2d 810, 820 (2009) ("Rule 607 of the Pennsylvania Rules of Criminal Procedure requires that a claim that the verdict was against the weight of the evidence be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion.").

5. The Sentencing Code contains recidivist provisions requiring mandatory sentences for persons convicted of various offenses. Section 9718.2 sets a mandatory minimum prison term of 25 years if the defendant is convicted of one of the numerous sexual offenses which require registration with the State Police, as specified at 42 Pa.C.S.A. § 9795.1, and the defendant had previously been convicted of

an offense enumerated under 42 Pa.C.S.A. § 9795.1. Specifically, Section 9718.2 states:

(a) MANDATORY SENTENCE.—
(1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9795.1(a) or (b) (relating to registration) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9795.1(a) or (b) or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon such conviction, the court shall give the person oral and written notice of the penalties under paragraph (2) for a third conviction. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).
42 Pa.C.S.A. § 9718.2. Although Baker challenged the constitutionality of these provisions, he did not dispute that he had been convicted of an enumerated offense.

file a more specific statement in support of Baker's post-sentence claims. Order filed 5/22/09.[6] Nothing additional was filed, however, and on November 16, 2009, the lower court filed an order indicating that Baker's post-sentence motion was "denied by operation of law effective 9/17/09." Order filed 11/16/09. Baker then filed the appeal currently before us on December 14, 2009,[7] raising five allegations of error.[8]

■■■ We have re-ordered the issues raised by Baker, for ease of review, and first address his claim that his suppression motion was erroneously denied because (1) the affidavit of probable cause for the search warrant contained an intentional material misstatement of fact and (2) Baker was "in custody, or the equivalent thereof, and in severe bodily pain, when he made his statement, with no *Miranda* warnings having been given." Appellant's brief at 7.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 842 (Pa.2003). Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Mistler,* 590 Pa. 390, 912 A.2d 1265, 1269 (Pa.2006) (quoting *Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879, 881 (Pa.1998)). Thus, the conclusions of law of the courts below are subject to our plenary review. *Mistler, supra; Commonwealth v. Morley,* 545 Pa. 420, 681 A.2d 1254, 1256 n. 2 (Pa.1996).

*Commonwealth v. Jones,* 605 Pa. 188, 197–198, 988 A.2d 649, 655 (2010). "Moreover, '[i]t is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given their testimony.'" *Commonwealth v. Baker,* 946 A.2d 691, 693 (2008) (citing *Commonwealth v. Gallagher,* 896 A.2d 583, 585 (Pa.Super.2006)).

---

6. It appears that a portion of the transcript of the suppression hearing had already been filed on July 10, 2008, while the remaining portion was filed on May 28, 2009. The transcript of Baker's sentencing hearing was filed on September 18, 2009, followed on September 30, 2009 by the transcript of the jury trial and the transcript of the SVP hearing.

7. Generally, a notice of appeal must be filed within 30 days of the imposition of sentence. Pa.R.Crim.P. 720(A)(3). When a defendant files a timely post-sentence motion as here, however, the notice of appeal must be filed either within 30 days of the entry of the order deciding the motion or within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion. Pa.R.Crim.P. 720(A)(2)(a), (b). Thus, although the lower court indicates that Baker's post-sentence motions were denied by operation of law effective September 17, 2009, since the order so indicating was not filed until November 16, 2009, Baker's notice of appeal will be deemed timely filed within 30 days of that order.

8. On December 14, 2009, Baker was directed to file a Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal, and he did so in a timely manner on January 4, 2010.

 Pertinent to Baker's suppression claim regarding the material misstatement of fact, the record reflects that his suppression motion sought relief on the grounds that

A crucial piece of information contained in the affidavit [of probable cause] is at best an overly broad assumption, misleading in nature, and speculative; it may be.inaccurate [sic], and false. Given the extensive training and extraordinary experience of Det. Earl Bock, same should have been known to him, and the inclusion of such false information was for the sole purpose of influencing the MDJ by attempting to connect defendant to an electronic fingerprint. See paragraph 9, supra.[9] In considering the sufficiency of the information in the affidavit, this statement should be redacted.

Suppression Motion filed 11/22/07. During the suppression hearing held on January 2, 2008, before the Honorable J. Wesley Oler, Jr., the Commonwealth indicated that it could not determine from Baker's motion which statement Baker was referring to, and Baker clarified that he believed the affidavit materially misrepresented that

Baker himself "accessed the computer." N.T. 1/2/08 at 5–6. Baker thus argued that because Analyst Hunt testified during the suppression hearing that he only told Detective Bock that *someone* had accessed the AOL account in question, it was a material misstatement of fact for Detective Bock to state in the affidavit that Hunt had found that *Baker* had accessed the account. Appellant's brief at 25. Baker urges that the existence of such a material misstatement of fact on the face of the search warrant required that it be declared invalid. *Id.* at 24 (*citing Commonwealth v. D'Angelo*, 437 Pa. 331, 263 A.2d 441, (1970)). Baker asserts that given Detective Bock's background, "it is beyond the realm of credulity that the misstatement was an error," and urges us to find that Judge Oler's finding that the error was unintentional to be unsupported by the evidence, and reason to reverse his denial of Baker's request to suppress the evidence seized as the result of the execution of the search warrant. *Id.* at 26. Baker asserts that it was error for Judge Oler to determine that Detective Bock's actions were not deliberate, and that such

---

9. Paragraph 9 of the motion asserted as follows:

9. the affidavit states that on January 19, 2007, analyst Brian Hunt of the Delaware County's District Attorney's Office, after review of connection logs provided by AOL, found that "BAKER **accessed** (emphasis supplied [in suppression motion]) his AOL account...... on December 26, 2006, between 01:25:44 EST and 02:37:43 EST.". The account was accessed via Internet Protocol (IP) Address 68.82154.254 which is owned and maintained by Comcast Cable Communications.
Suppression Motion filed 11/22/07. Our review of the affidavit reveals that it stated, in pertinent part that America Online reported that "a person utilizing the email address 'jumpurboneson3@aol.com'" sent images of suspected child pornography on December 23, 2006 and December 26, 2006. Affidavit

of Probable Cause dated 2/6/07. In response to a court order, AOL disclosed that the email address was assigned to Baker. *Id.* The affidavit further stated that:

On January 19, 2007, Analyst Hunt reviewed the connection logs provided by [sic] America Online in their response to the previous [sic] mentioned court order, found that BAKER accessed his AOL account via Internet Protocol (IP) Address 68.82154.254 on December 26, 2006, between 01:25:44 EST and 02:37:43 EST. Hunt then conducted a WHOIS search using http://centralopps.net for the IP Address 68.82.154.254 and found it to be owned and maintained by Comcast Cable Communications.

*Id.* The affidavit then stated that Comcast reported that the subscriber to the IP address was Ruth Murray [Baker's stepmother, with whom he shared the residence]. *Id.*

a determination requires reversal of the suppression ruling. We disagree.

In order to secure a valid search warrant, an affiant must provide a magistrate with information sufficient to persuade a reasonable person that there is probable cause for a search. The information must give the magistrate the opportunity to know and weigh the facts and to determine objectively whether there is a need to invade a person's privacy to enforce the law. *Commonwealth v. D'Angelo*, 437 Pa. 331, 336–37, 263 A.2d 441, 444 (1970), and cases therein cited.

*Commonwealth v. Tucker*, 252 Pa.Super. 594, 384 A.2d 938, 941 (1978).

In determining whether a search warrant is based upon probable cause, "we would do well to heed the sound admonition of *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965)":

[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by the non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*Commonwealth v. Council*, 491 Pa. 434, 443–444, 421 A.2d 623, 627–628 (1980). Al-

though *D'Angelo* invalidated a search warrant based upon a misstatement of a fact in the affidavit of probable cause, later cases have held that "misstatements of fact will invalidate a search warrant and require suppression of the fruits of the search *only if the misstatements of fact are deliberate and material.*" *Tucker*, 384 A.2d at 941 (emphasis added) (*citing Commonwealth v. Scavincky*, 240 Pa.Super. 550, 359 A.2d 449, 452 (1976); *Commonwealth v. Jones*, 229 Pa.Super. 224, 323 A.2d 879, 881 (1974)). *See also Commonwealth v. Murphy*, 795 A.2d 997, 1006 (Pa.Super.2002) (*citing Commonwealth v. Clark*, 412 Pa.Super. 92, 602 A.2d 1323, 1325 (1992)).

While we have recognized that the veracity of facts establishing probable cause recited in an affidavit supporting a search warrant may be challenged and examined, *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973); *Commonwealth v. D'Angelo*, 437 Pa. 331, 263 A.2d 441 (1970), we have not suggested that every inaccuracy will justify an exclusion of evidence obtained as a result of the search.

*Commonwealth v. Monte*, 459 Pa. 495, 508–509, 329 A.2d 836, 842–843 (1974) (footnote omitted) (Noting that "[w]e are not here confronted with the deliberate misstatement of material facts by a police official affiant as was presented in *D'Angelo, supra.*"). The question of whether a misstatement was deliberately made is to be answered by the lower court. *Commonwealth v. Williams*, 236 Pa.Super. 184, 345 A.2d 267, 270 (1975) ("It is the province of the trier of fact to believe or disbelieve all or none of the testimony offered, and when supported by the record, we will not invade that province. *Commonwealth v. Johnson*, 457 Pa. 554, 327 A.2d 632 (1974).").

■ Here, Judge Oler acknowledged that while the mere presence of an error in an affidavit of probable cause supporting a search warrant does not invalidate the warrant, such a misstatement of fact will invalidate the warrant if it is deliberate and material (a material fact being one without which probable cause to search would not exist). *Id.* at 11 (*citing Commonwealth v. Menginie*, 312 Pa.Super. 293, 458 A.2d 966, 969 (1983); *Commonwealth v. Zimmerman*, 282 Pa.Super. 286, 422 A.2d 1119, 1124 (1980)). Based on the evidence presented to him, however, Judge Oler concluded that Detective Bock did not deliberately make the misstatement of fact in question, and it is not our province to disturb that finding. As such, we affirm Judge Oler's denial of Baker's request to suppress the evidence seized as the result of the execution of the search warrant.[10]

**10.** In declining to reverse the suppression motion on this issue, we note that on appeal, Baker does not dispute Judge Oler's additional conclusion that the misstatement was not material. Even if Baker had challenged this determination, however, he would be entitled to no relief.

The standard for determining whether probable cause exists for the issuance of a search warrant is the "totality of the circumstances test" as set forth below:

The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... concluding that probable cause existed."

*Commonwealth v. Karns*, 389 Pa.Super. 58, 566 A.2d 615 (1989), quoting *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, if a warrant is based upon an affidavit which contains deliberate or knowing misstatements of material fact, the search warrant must be rendered invalid. *Commonwealth v. Clark*, 412 Pa.Super. 92, 602 A.2d 1323 (1992). In deciding whether a misstatement is material, the test is not whether the statement strengthens the application for the search warrant, but rather whether it is essential to it. *Commonwealth v. Yucknevage*, 257 Pa.Super. 19, 390 A.2d 225 (1978).

*Commonwealth v. Cameron*, 445 Pa.Super. 165, 664 A.2d 1364, 1367 (1995). Here, as Judge Oler explained:

The evidence pertaining to this point tended to show that the identified source of the affiant's information, the aforesaid Brian Hunt, at the beginning of January, 2007, received reports and supporting documentation from [AOL] that two emails containing pictures constituting child pornography had been sent over the internet by a person with an e-mail address of jumpurboneson 3@aol.com on December 23, 2006, and December 26, 2006, at certain specified times. Pursuant to a court order, AOL on January 18, 2007, disclosed that the identity of the person assigned this e-mail address was one Jeffrey W. Baker, of a certain zip code, and that the Internet Protocol (IP) address—i.e., the "address" in the form of a unique number utilized by the offending computer at the time the e-mails were sent—was 68.82.154.254.

This numerical "address" was one in the system of [Comcast Cable Communications]. It contained encoded information which enabled Comcast, pursuant to a second court order, to disclose on January 31, 2007, that this IP address was assigned to one Ruth Murray, at 115 South Enola Drive, Enola, Pennsylvania

These and other facts, such as the residential address of Defendant at 115 South Enola Drive, Enola, Pennsylvania, and his prior record of convictions for possession of child pornography, were reported by Mr. Hunt to the affiant on January 31, 2007. In his report, Mr. Hunt apparently referenced the person sending the offending e-mails as "the suspect," intending the term to mean the "perpetrator" rather than Defendant in particular. However, in his affidavit of probable cause in support of the search warrant, Detective Bock construed this reference to be specific to Defendant, and included the sentence complained of by Defendant: "Hunt found that BAKER ac-

Neither are we persuaded to grant Baker relief regarding his request to suppress the statements he made while the search warrant was being executed. Baker's claim in this regard is premised on his insistence that at the time he made the statements he was subject to a custodial interrogation requiring *Miranda* warnings. Appellant's brief at 26.

A law enforcement officer must administer *Miranda* warnings prior to custodial interrogation. *Commonwealth v. Johnson*, 373 Pa.Super. 312, 541 A.2d 332, 336 (Pa.Super.1988). The standard for determining whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. *Commonwealth v. Gwynn*, 555 Pa. 86, 723 A.2d 143, 148 (1998). Custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." *Johnson*, 541 A.2d at 336 quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966). "Interrogation" is police conduct "calculated to, expected to, or likely to evoke admission." *Id. quoting Commonwealth v. Simala*, 434 Pa. 219, 226, 252 A.2d 575, 578 (1969). When a person's inculpatory statement is not made in response to custodial interrogation, the statement is classified as gratuitous,

and is not subject to suppression for lack of warnings. *Id.*

The appropriate test for determining whether a situation involves custodial interrogation is as follows:

> The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate Miranda warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.

*Commonwealth v. Busch*, 713 A.2d 97, 100 (Pa.Super.1998) *quoting Commonwealth v. Rosario*, 438 Pa.Super. 241, 652 A.2d 354, 365–66 (1994) (*en banc*), *appeal denied*, 546 Pa. 668, 685 A.2d 547 (1996) (other citations omitted). Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest. *Commonwealth v. Ellis*, 379 Pa.Super. 337, 549 A.2d 1323, 1332 (Pa.Super.1988), *appeal denied*, 522 Pa. 601, 562 A.2d 824 (1989), *citing California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983).

The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was trans-

---

cessed his AOL account via Internet Protocol (IP) Address 68.82.154.254. on December 26, 2006 between 01:25:44 EST and 02:37:43 EST."
Pa.R.A.P. 1925(a) Opinion filed 1/22/10 at 8–9 (citations omitted). Based on this evidence, we find that Judge Oler correctly opined that the misstatement was not "material", in that

even in redacted form, without reference to Baker as the person who was utilizing the computer at the time in question, the affidavit contained more than sufficient information to support a belief that contraband in the form of child pornography would be found in a search of the address in question. *Id.* at 11–12.

ported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. *Busch,* 713 A.2d at 101. The fact that a police investigation has focused on a particular individual does not automatically trigger "custody," thus requiring Miranda warnings. *Commonwealth v. Fento,* 363 Pa.Super. 488, 526 A.2d 784, 787 (Pa.Super.1987).

*Commonwealth v. Mannion,* 725 A.2d 196, 200 (Pa.Super.1999).

As we noted above, in addressing this alleged error in Judge Oler's suppression ruling, we are limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Jones, supra.* Here, Judge Oler concluded that Baker "was told that he was not under arrest, and that he was not going to be arrested on the occasion in question, and that he was free to leave; he was not handcuffed or transported, and his interrogation was bargained for by him and not prolonged." Pa.R.A.P. 1925(a) Opinion filed 1/22/10 at 12. These findings of fact are supported by the record, and we discern no legal error in Judge Oler's conclusion, based on those facts, that Baker "was not subjected to conduct on the part of the police that could be objectively construed as constituting a restraint upon his freedom equivalent to a formal arrest." *Id.* Significantly, in assailing this ruling, Baker does not claim that Judge Oler employed an incorrect legal standard for determining whether he was in custody. Instead, Baker's argument on this issue amounts to nothing more than an attempt to have this Court reweigh the evidence as it applies to that determination. We affirm Judge Oler's

denial of Baker's request to suppress the statement he made.

In addition to asserting error in the denial of his suppression motion, Baker also challenges the sufficiency of the evidence presented to support his convictions for sexual abuse of children pursuant to 18 Pa.C.S. § 6312(d)(1).

In evaluating a challenge to the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence was sufficient to have permitted the trier of fact to find that each and every element of the crimes charged was established beyond a reasonable doubt. "It is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence." In addition, the facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the [factfinder] unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.' "

*Commonwealth v. Davidson,* 860 A.2d 575, 579–580 (Pa.Super.2004), *affirmed by* 595 Pa. 1, 938 A.2d 198 (2007) (*citing Commonwealth v. Nicotra,* 425 Pa.Super. 600, 625 A.2d 1259, 1261 (1993)).

As we noted above, at the time Baker was charged and tried, Section . 6312(d) criminalized the knowing possession or control of "any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in

a prohibited sexual act or in the simulation of such act." 18 Pa.C.S. § 6312(d)(1). Baker's sufficiency argument does not dispute that the material found on his computer depicted children under the age of 18 years engaging in prohibited sexual acts or in the simulation of such acts. Instead, his claim as it is worded his appellate brief's Statement of Questions Involved asserts that the Commonwealth failed to show that he "knowingly possessed the contraband." Appellant's brief at 7. We disagree, and find that viewing the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, drawing all reasonable inferences in its favor and with the awareness that it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence, the Commonwealth presented the following evidence to sufficiently evidence to support Baker's convictions pursuant to Section 6312(d)(1).

The investigation leading to Baker's current convictions began after police received information from the National Center for Missing and Exploited Children advising them of suspected activity involving child pornography using America Online (AOL). N.T. 7/14/08 at 49–50, 53–54. Pursuant to a court order, police then obtained information implicating Baker. *Id.* at 56, 58–61. When police executed the resulting search warrant on February 6, 2007, they found a computer and two CDs in Baker's bedroom, which later investiga-tion revealed to contain child pornography, some with corresponding obscene file names. *Id.* at 74–75; N.T. 7/15/08 at 102, 107–109. The search warrant pertained to all computers found in the residence, but Baker's father did not want the police to seize the desktop used by the father. N.T. 7/14/08 at 81. Baker then initiated a conversation with the police, indicating that he would answer questions if they agreed to leave the desktop. N.T. 7/15/08 at 117. As part of that conversation, Baker admitted that through his use of email and "Limewire," a file-sharing website, he traded still and video nude and non-nude images of children. *Id.* at 119–120. He searched for such images using terms like "anal gang bang" and "PTHC," which the police recognized as referring to "pre-teen hard-core" sex acts. *Id.* at 120–121. Baker told police that he had searched using the term "PTHC" the previous evening, and after viewing some of the files downloaded as the result of that search, believed that some were probably child pornography. *Id.* at 122.

■ We find that based on this evidence, the jury properly concluded that each and every element of the crimes charged was established beyond a reasonable doubt—i.e. that Baker knowingly possessed or controlled material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.[11] As such,

11. To the extent that the argument portion of Baker's appellate brief alleges that the Commonwealth failed to prove that he *viewed* the contraband, Appellant's brief at 12, we find this assertion immaterial as the language "intentionally views" was not included in the activity proscribed by Section 6312(d)(1) until September 14, 2009. Further, Baker did not include this allegation in his court-ordered Pa.R.A.P. 1925(b) Statement of Matters Complained of on appeal, which limited Baker's assertion that the evidence was insufficient to sustain his convictions to the claim that the Commonwealth failed to prove that he "knowingly possessed the contraband." Pa. R.A.P. 1925(b) Statement filed 1/4/10. As such, even if applicable, the allegation has been waived for purposes of appeal. *Commonwealth v. Carpenter*, 955 A.2d 411, 415 (Pa.Super.2008) ("It is well established that an appellant's failure to include claims in the court-ordered 1925(b) statement will result in

we affirm his judgment of sentence on these grounds.

 Baker next asks us to determine whether the trial court erred in failing to give a jury instruction regarding the voluntariness of the statements he made during the execution of the search warrant. Appellant's brief at 7. "[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Galvin*, 603 Pa. 625, 651, 985 A.2d 783, 798–799 (2009) (*citing Commonwealth v. DeMarco*, 570 Pa. 263, 271, 809 A.2d 256, 260–61 (2002)).

> When evaluating jury instructions, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. *Commonwealth v. Ohle*, 503 Pa. 566, 582, 470 A.2d 61, 70 (1983).

*Commonwealth v. Prosdocimo*, 525 Pa. 147, 150, 578 A.2d 1273, 1274 (1990).

Baker requested that Pennsylvania Suggested Standard Jury Instruction 3.04D be given to the jury. That instruction states:

> 3.04D—CONFESSION OR ADMISSION: VOLUNTARINESS—PROOF; MIRANDA
>
> 1. In determining voluntariness you should also consider whether there was any violation of the U.S. Supreme Court case of *Miranda v. Arizona*. *Miranda* requires that the police, before questioning a suspect in custody, give him or her the *Miranda* warning. The essence of the warning is that a suspect has a right

to remain silent, that anything he or she says can be used against him or her; and that he or she has a right to the advice and presence of his or her own or a free attorney. The police are not to question a suspect unless he or she understands the warning and knowingly, intelligently, freely, and voluntarily gives up his or her rights to silence and an attorney.

> 2. Whether or not there was a violation of *Miranda* requirements may be an important factor for you in determining whether a standard meets the basic test of voluntariness. The importance of any *Miranda* violation depends upon the nature, seriousness, and reasons for the violation and whether it affected the defendant at the time [he] [she] made the statement.

Pennsylvania Suggested Standard Jury Instruction (Crim.) 3.04D. Instead, Judge Ebert instructed the jury as follows:

> Now, there was evidence in this case that the Defendant made certain statement to the police at the time they searched his home. You may not consider the statement that the Defendant allegedly made to the police as evidence against the Defendant unless you find the Defendant, in fact, made the statement.

> Obviously, words allegedly written or spoken by a Defendant should not be used against him unless he actually uttered those words. Only so much of his statement as he actually made may be considered as evidence against him.

> If you find that the Defendant made the statement, then you may weigh along with the other evidence in the case in determining whether he has been

a waiver of that issue on appeal. *See Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998); Pa. Pa.R.A.P., Rule 1925(b)(4)(vii).").

proven guilty beyond a reasonable doubt.[12]

**You may not consider the statement as evidence against the Defendant unless you find that he made the statement voluntarily.** This means that you must be satisfied by a preponderance of the evidence; that it, is more likely than not that the Defendant made the statement voluntarily.[13]

I will now define the word voluntary for you. A Defendant's statement is always regarded as voluntary if it is made spontaneously; that is, not in response to police questioning. This is true even though the defendant is intoxicated, mentally ill, or influenced by some internal compulsion to speak.

However, if a defendant makes a statement in response to police questioning, the basic test for determining its voluntariness is this: To be voluntary, a Defendant's statement must be the product of a rational mind and a free will.

The Defendant must have a mind capable of reasoning about whether to make a statement or say nothing, and he must be allowed to use it. The Defendant must have sufficient willpower to decide for himself whether or not to make a statement, and he must be allowed to make that decision.

This does not mean that a statement is involuntary because the Defendant made a hasty or a poor choice. It might have been wiser to say nothing nor does it mean that his statement is involuntary merely because it was made in response to certain questions.

It does mean, however, that if a Defendant's mind and will are confused or burdened by promises of advantage, threats, physical or psychological abuse, or other improper influences, any statement he or she makes is involuntary.

The reasons that the law prohibits involuntary statements are grounded in our Constitution. The prohibition is based on a strong public policy that disapproves of the use by police of improper methods to extract involuntary confessions or admissions.

Furthermore, our system for enforcing the law should not operate in a way that takes advantage of persons who are in a physically or mentally weakened condition to the point that they cannot give a knowing, intelligent, and voluntary statement.

Where voluntariness is an issue, the prosecution has the burden of proving by a preponderance of the evidence that it is more likely than not that the statement was voluntary.[14]

In deciding whether the statement was voluntary, you should weigh all facts and circumstances surrounding the making of the statement that shed light on whether the statement was the product of an essentially free will and choice and not of a will and choice overborne by pressure.

**12.** This portion of the charge to the jury essentially mirrors the language of Pennsylvania Suggested Standard Jury Instruction (Crim.) 3.03.—DEFENDANT'S CONFESSION OR ADMISSION: GENUINENESS.

**13.** This portion of the charge to the jury essentially mirrors the language of Pennsylvania Suggested Standard Jury Instruction (Crim.) 3.04A—DEFENDANT'S CONFESSION OR ADMISSION: VOLUNTARINESS, PREFATORY REMARKS.

**14.** This portion of the charge to the jury essentially mirrors the language of Pennsylvania Suggested Standard Jury Instruction (Crim.) 3.04B—DEFENDANT'S CONFESSION OR ADMISSION: VOLUNTARINESS, BASIC STANDARD.

The facts and circumstances to be considered include the age, intelligence, personality, education, experience, and mental and physical state of the Defendant; how the Defendant was treated before, during, and after questioning; the time, place, and conditions under which the Defendant was questioned; the motives and attitudes of the police who questioned him, and what was said and done by the police, the Defendant, and anyone else present during the questioning.[15]

N.T. 7/14/08 at 205–208 (emphasis added).

In challenging Judge Ebert's refusal to give his requested instruction, Baker cites to case law supporting the principle that a defendant is allowed to attack the voluntariness of a statement at trial, even though a suppression court held the statement inadmissible. Appellant's brief at 13–14 (*citing Commonwealth v. Motley*, 472 Pa. 421, 372 A.2d 764 (1977)). Here, Baker was permitted to (and did) make such an attack through cross-examination of Commonwealth witnesses, and he is not currently claiming that he was prevented from doing so. Instead, Baker raises the unique claim that when choosing what jury instructions to give, Judge Ebert wrongly deferred to the suppression court's earlier refusal to suppress Baker's statements.

■■■ Although counsel and Judge Ebert discussed the propriety of Baker's proposed jury instruction at length prior to Judge Ebert's denial of that request, counsel did not specifically object to the instructions subsequently given to the jury. As such, Baker has technically waived his current challenge to those jury instructions, novel though it is. *Commonwealth v. Garang*, 9 A.3d 237, 245 (Pa.Su-

per.2010) (*citing Commonwealth v. Pressley*, 584 Pa. 624, 887 A.2d 220 (2005)). Even if we were to find this issue preserved, however, our thorough review of the evidence and the applicable legal standards by which we assess the validity of jury instructions, leads to the conclusion that Judge Ebert's instructions were appropriate, and that his refusal to give instruction 3.04(D) was not in error.

■■■ The suppression court ruled that Baker's statement did not require suppression because he was not in custody, requiring *Miranda* warnings, and, as we explained above, this decision is supported by the evidence and will be affirmed. It is undisputed that a suppression ruling that evidence shall not be suppressed is "final, conclusive, and binding at trial, except upon a showing of evidence which was theretofore unavailable" pursuant to Pa. R.Crim.P. 581(J), which states:

If the court determines that the evidence shall not be suppressed, such determination shall be final, conclusive, and binding at trial, except upon a showing of evidence which was theretofore unavailable, but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its suppressibility.

Comment:

Paragraph (J) does not change the Massachusetts or "humane" rule (whereby a defendant may raise the issue of voluntariness of a confession to the jury following denial of a motion to suppress) which is followed in the Commonwealth.

Pa.R.Crim.P. 581(J).[16]

Thus, in the absence of evidence "theretofore unavailable," Baker could not pres-

---

**15.** This portion of the charge to the jury essentially mirrors the language of Pennsylvania Suggested Standard Jury Instruction (Crim.) 3.04C.—DEFENDANT'S CONFESSION OR

ADMISSION: VOLUNTARINESS—PROOF, TOTALITY OF CIRCUMSTANCES.

**16.** As the *Motley* Court explained:

ent evidence at trial challenging the *admissibility* of the statements he made to police. He could, however, and did, raise the issue of the *voluntariness* of the statements to the jury. Comment to Rule 581; *Commonwealth v. Holland,* 518 Pa. 405, 412–413, 543 A.2d 1068, 1071 (1988) ("[I]f appellant had a basis for challenging the voluntariness of his confessions, evidence could have been introduced at trial placing the issue of voluntariness before the jury, even though a suppression court had previously ruled the confessions admissible."); *Motley,* 472 Pa. at 429, 372 A.2d at 768; *Commonwealth v. Cameron,* 780 A.2d 688, 693 (Pa.Super.2001) ("Despite a pretrial ruling that a confession is voluntary, ... a criminal defendant nonetheless is entitled to a second opportunity to test the voluntariness of his statement by introducing evidence at trial relating to voluntariness and have the jury consider the question.").

A review of the instant record reveals that Baker tested the voluntariness of his statements when he cross-examined the Commonwealth witnesses regarding the circumstances that existed when the statements were made. N.T. 7/14/08 at 83–89; N.T. 7/15/08 at 125–126, 130–135.[17] Hav-

ing raised the issue of the voluntariness of his statements, Baker was entitled to jury instructions on that issue, and, in fact, received such instructions. Because those instructions given, as a whole, "clearly, adequately, and accurately" presented the law to the jury for its consideration, we find no abuse of discretion or error of law on the part of Judge Ebert in this regard, and we decline to grant Baker the relief he seeks on this issue. *Galvin, supra; Prosdocimo, supra.*

Having found no error in Baker's conviction on the grounds asserted above, we turn to his challenge to the constitutionality of 42 Pa.C.S.A. 9718.2. As we noted, the application of that statute resulted in the imposition of a mandatory minimum sentence of 25 years' incarceration for each conviction under Section 6312(d)(1) because at the time Baker committed those crimes, he had a prior conviction for violating that statute, an enumerated offense under Section 9795.1. Baker argues on appeal that those sentences amounted to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution[18] and Article I, § 13 of the Pennsylvania Constitution.[19] Appel-

This Court has adopted the Massachusetts or "humane" rule with regard to determining the voluntariness of statements by an accused. *Commonwealth v. Joyner,* 441 Pa. 242, 272 A.2d 454 (1971); Pa.R.Crim.P. 323(j). [Rule 323 (renumbered Rule 581, effective April 1, 2001) was modeled after the so-called Massachusetts or 'humane' rule approved by the Supreme Court of the United States in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). *Cameron,* 780 A.2d at 693, fn. 6.] This procedure allows a defendant to attack the voluntariness of admissions at trial, even though a suppression court has held the statements admissible. The jury is instructed to disregard the statements if they determine the statements were involuntary. *Commonwealth v. Coach,* 471 Pa. 389, 370

A.2d 358 (1977); *Commonwealth v. Myers,* 472 Pa. 200, 371 A.2d 1279 (1977). *Motley,* 472 Pa. at 429, 372 A.2d at 768.

17. Although Baker did not present any additional, separate evidence regarding the voluntariness of his statements, he does not suggest that the failure to do so was anything other than by his own choice.

18. The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." USCS Const. Amend. 8.

19. Article I, § 13 states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." Pa. Const. Art. 1, § 13.

lant's brief at 20.[20]

▮▮▮▮ We have discovered no prior decisions of the courts of this Commonwealth addressing the constitutionality of the mandatory minimum sentence provisions of Section 9718.2. Nonetheless, we address this, like all challenges to the constitutionality of a statute, under a well-established standard: there is "a strong presumption that acts of the General Assembly are constitutional, and this Court will not declare such acts unconstitutional unless they clearly, palpably, and plainly violate the constitution." *Commonwealth v. Killinger*, 585 Pa. 92, 94, fn. 2, 888 A.2d 592, 594, fn. 2 (2005) (citations omitted); *Commonwealth v. Shawver*, 18 A.3d 1190 (Pa.Super.2011) ("[A] statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution. All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster. Thus, there is a very heavy burden of persuasion upon one who challenges the constitutionality of a statute. *Pennsylvanians Against Gambling Expansion Fund, Inc. et al. v. Commonwealth of Pennsylvania, et al.*, 583 Pa. 275, 292, 877 A.2d 383, 393 (2005).").

Recidivist statutes, which have been adopted in all fifty states, are not inherently unconstitutional. The policy behind them is to punish more severely defendants who are repeat offenders. Recidivist statutes serve notice on defendants that if they continue their criminal behavior they will be dealt with more harshly by the law. By incapacitating habitual criminals, citizens are safeguarded from defendants' repeated criminal activity. Recidivist statutes have repeatedly been upheld against contentions that they violate constitutional limitations on cruel and unusual punishment.

*Parker*, 718 A.2d at 1268 (*citing Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992)).[21]

▮▮▮▮ Here, as Baker acknowledges, the Eighth Amendment does not require strict *proportionality* between crime and sentence—rather, it forbids only extreme sentences which are grossly *disproportionate* to the crime. Appellant's brief at 20; *Parker*, 718 A.2d at 1268 (*citing Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 209 (1997)). Baker also concedes that the courts of this Commonwealth have frequently upheld recidivist statutes against constitutional challenges, but nevertheless, insists that "there must be a point at which deference to the Constitution becomes paramount to the dictates of the legislature." Appellant's brief at 21.

In pursuit of relief on his allegation of disproportionality, Baker cites *Commonwealth v. Spells*, 417 Pa.Super. 233, 612 A.2d 458, 462 (1992) (*en banc*), which he asserts "adopted certain principles of pro-

**20.** In so arguing, Baker notes that Article I, § 13 of the Pennsylvania Constitution provides no greater protection against cruel and unusual punishment than does the Eighth Amendment, thus examining the unconstitutionality of Section 9718.2 consists of an Eighth Amendment analysis. Appellant's brief at 20 (*citing Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982)). Baker is correct in this regard, and therefore we need not engage in a separate state constitutional review. *Commonwealth v. Parker*, 718 A.2d 1266, 1268 (Pa.Super.1998), *appeal denied* 561 Pa. 655, 747 A.2d 899 (1999).

**21.** The defendant in that case, having been convicted of a third robbery and sentenced to twenty-five to fifty years' imprisonment, unsuccessfully argued that the sentence amounted to cruel and unusual punishment in violation of the eighth amendment to the United States Constitution and Article I, section 13 of the Constitution of Pennsylvania. *Parker*, 718 A.2d at 1267–1268.

portionality review established in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)." Appellant's brief at 21. The defendant in *Spells* raised a proportionality of sentence argument after she was charged and convicted of aggravated assault, and was sentenced to a mandatory five year to ten year sentence pursuant to 42 Pa.C.S.A. § 9712. *Spells,* 612 A.2d at 459–460.[22] Spells characterized that mandatory minimum sentence as cruel and unusual punishment, pointing out that the "more serious" crime of attempted murder carries no minimum sentence, theoretically permitting a defendant convicted of that charge to receive only probation. *Id.,* 612 A.2d at 461.

Addressing this argument, the *Spells* Court cited the United States Supreme Court's reference to "three objective criteria which could be examined to determine if a sentence is proportional to the crime committed." *Id.,* 612 A.2d at 462 (*citing Solem,* 463 U.S. at 292, 103 S.Ct. 3001).

> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences im-

posed for commission of the same crime in other jurisdictions.

*Id.*

As the *Spells* Court noted, however, the propriety of *Solem's* proportionality test was addressed by the United States Supreme Court in the *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). In his concurring opinion, Justice Kennedy, joined by Justices O'Connor and Souter, attempted to reconcile the Court's conflicting opinions on the subject, recognizing that the Eighth Amendment's cruel and unusual punishment clause encompasses a narrow proportionality principle that applies to non-capital cases. *Spells,* 612 A.2d at 463.[23] *See also Ewing v. California,* 538 U.S. 11, 20, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003);[24] ("Mandatory sentencing schemes in non-capital cases are subject to a narrow proportionality analysis under the Eighth Amendment."); *United States v. Walker,* 473 F.3d 71, 79 (3rd Cir.2007) ("Only an extraordinary case will result in a constitutional violation.").

> Interpreting the three objective factors established by Justice Powell in *Solem,* Justice Kennedy found that *Solem* did not establish a rigid three-part test. While recognizing *Solem's* holding that, in determining unconstitutional disproportionality, no one factor will be dispos-

---

**22.** Although the evidence against Spells supported a charge of attempted murder, she was only charged with aggravated assault. *Spells,* 612 A.2d at 459.

**23.** "Although Justices Kennedy, O'Connor and Souter did not agree on overruling *Solem,* in all other respects the Kennedy opinion functions as a majority opinion, and constitutes a "joint opinion," similar to those in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) and *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)." *Spells,* 612 A.2d at 463 (*citing Sumner v. Shuman,*

483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987)) (treating *Gregg, Proffitt,* and *Jurek,* which were joint opinions, as precedent).

**24.** In *Ewing,* the Court held in a five to four decision that a twenty-five year minimum sentence for stealing three golf clubs pursuant to California's three-strikes law did not violate the Eighth Amendment, and that any criticism for the statute is properly directed at the legislature. *Ewing,* 538 U.S. at 21, 123 S.Ct. 1179 (citing *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), in which a life sentence was given for a three-time felon where the underlying offense was obtaining $120.75 by false pretenses).

itive in a given case, *Solem,* 463 U.S. at 291, n. 17, 103 S.Ct. at 3010, n. 17, Justice Kennedy opined that one factor may nevertheless determine the constitutionality of a particular sentence:

> *Solem* is best understood as holding that comparative analysis within and between jurisdictions [*Solem's* criteria ii and iii] is not always relevant to proportionality review. The Court stated that "it may be helpful to compare sentences imposed on other criminals in the same jurisdiction," and that "courts find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." *Id.,* at 291–92 [103 S.Ct. at 3010–3011]. . . . It did not mandate such inquiries.
>
> A better reading of our cases leads to the conclusion that intra- and inter-jurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. . . .
>
> The proper rule for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.

*Harmelin,* 111 S.Ct. at 2706–2707.[25]

*Spells,* 612 A.2d at 463. *See also Commonwealth v. Zurburg,* 937 A.2d 1131 (Pa.Super.2007). *Spells* adopted Justice Kennedy's analysis as the precedential standard in Pennsylvania for measuring proportionality. *Parker,* 718 A.2d at 1268–1269. Following that analysis, *Spells* held that when such gross disproportionality is not shown, the second and third "comparative analysis" prongs of *Solem* need not be applied. *Id.* Relying on *Harmelin,* the *Spells* court found no disproportionality, explaining:

> The seriousness of the crime with which Spells was convicted cannot be questioned. As stated above, a mandatory five year minimum sentence for offenses committed with firearms has repeatedly withstood constitutional challenge. Under the *Harmelin* standard, a comparative analysis is not needed. Therefore, the fact that the "more serious" crime of attempted murder does not likewise carry a mandatory minimum becomes irrelevant. Accordingly, under the current status of the proportionality principle in regard to the constitutional protection against cruel and unusual punishment— a protection coextensive with protections provided by our state constitution— Spells mandatory sentence of five years does not constitute a cruel and unusual punishment under either constitution.

*Spells,* 612 A.2d at 464 (footnote omitted).

■■■ Thus, in examining the propriety of Baker's sentences, the initial inquiry is whether there is an inference of gross disproportionality between the crimes

---

25. In *Harmelin,* Justice Kennedy concluded that due to the serious nature of Harmelin's crime, i.e., possession of more than 650 grams of cocaine, no such comparative analysis was needed. Significant to the matter at hand, the Justice found even less discretion in reviewing a sentence for proportionality when a mandatory sentence is involved, explaining: "Since the beginning of the Republic, Congress and the States have enacted mandatory sentencing schemes. To set aside petitioner's mandatory sentence would require rejection not of the judgment of a single jurist, as in *Solem,* but rather the collective wisdom of the Michigan Legislature and, as a consequence, the Michigan citizenry. We have never invalidated a penalty mandated by a legislature based only on the length of sentence, and, especially with a crime as severe as this one, we should do so only in the most extreme circumstance." *Harmelin,* 501 U.S. at 1006–1007, 111 S.Ct. 2680.

committed and the sentences imposed. *Parker,* 718 A.2d at 1269; *Spells, supra.* Baker, however, does not specifically assert that such an inference exists. Instead, he asserts that his sentence is "grossly disproportionate" to the charges for which he was convicted because "[w]hile an offense against society's children is not to be taken lightly, a 25–year mandatory far exceeds any sense of proportionality between the punishment imposed and the crime committed. In fact, one convicted of *murder* in the third degree faces no mandatory minimum sentence." Appellant's brief at 22. (italics in original). This argument does not meaningfully address the gravity of the offense and the harshness of the penalty, but instead assumes the existence of an inference of gross disproportionality and leaps ahead to a comparative analysis similar to the one made by the appellant in *Spells,* 612 A.2d at 464. In determining whether a punishment is disproportionate, however, application of such a comparative analysis is required only after a showing that raises an inference of gross disproportionality. *Parker,* 718 A.2d at 1269. Here, there has been no such showing. Therefore, the fact that the "more serious" crime of third degree murder does not carry a mandatory minimum is irrelevant. *Spells,* 612 A.2d at 464.

Since Baker has failed to show that the mandatory minimum sentences he received are grossly disproportionate to the crimes which he committed, it is unnecessary to reach his additional claims under the comparative analysis prongs of *Solem,* and Baker has failed show that his sentences violate the prohibition against cruel and unusual punishment set forth in the Eighth amendment to the United States Constitution and Article I, section 13 of the Pennsylvania Constitution.[26]

■ We thus turn our attention to Baker's claim that he was improperly classified as a sexually violent predator "in that there was no victim[s], no violence or predatory behavior, and defendant did not meet the criteria of pedophilia." Appellant's brief at 7. We view this as a challenge to the sufficiency of the evidence supporting Baker's SVP designation.

The process of determining SVP status is statutorily mandated and well defined, with the triggering event being a conviction for one or more offenses specified in 42 Pa.C.S.A. § 9795.1 (including violations of Section 6312(d)), which, in turn, prompts the trial court to order an assessment by a member of the Sexual Offender Assessment Board (SOAB) to determine if the individual should be classified as a sexually violent predator. 42 Pa.C.S.A. § 9795.4.[27]

---

**26.** Although we need not reach the second and third prongs of *Solem,* we are compelled to address a statement contained in Baker's argument thereon. Baker maintains that "[i]t must not be overlooked or forgotten that appellant did not interact with the children in the images, did not lure them into picture taking, did not photograph them nor pose them." Appellant's brief at 22. Baker may attempt to dissociate himself from the "production" of the despicable images he so eagerly pursued, but we find this distinction hypocritical, at best. It is only because of predators like Baker, who make up a disturbingly large "viewing audience," that the children in the images were lured, posed and photographed in the first place. Baker's "clean hands" with regard to the actual physical "interaction" with the children does not make their abuse for his pleasure any less heinous.

**27.** Section 9795.4, pertaining to Assessments, specifically directs as follows:

(a) ORDER FOR ASSESSMENT.—After conviction but before sentencing, a court shall order an individual convicted of an offense specified in section 9795.1 (relating to registration) to be assessed by the board. The order for an assessment shall be sent to the administrative officer of the board within ten days of the date of conviction.

A hearing is then held before the trial court, at which the court must determine whether the Commonwealth has proved by clear and convincing evidence that the individual is an SVP. 42 Pa.C.S.A. § 9795.4(e)(1)-(3). That term is defined by the statute as:

A person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality [28] or personality disorder that makes the person likely to engage in predatory [29] sexually violent offenses.

42 Pa.C.S. § 9792.

Here, Baker was convicted of violating Section 6312(d)(1), a predicate offense, which triggered the trial court to order an assessment by SOAB member Herbert Hays, who, after conducting the assessment, opined that Baker met the criteria for classification as a sexually violent predator. N.T. 4/20/09 at 24; Commonwealth's Exhibit 7 (Sexually Violent Predator Assessment Report) at 8. An SVP hearing was then held before Judge Ebert on April 20, 2009, during which Hays and Byran Nelson Spease testified for the Commonwealth. The parties then briefed their respective positions, and Judge Ebert rendered a decision on May 15, 2009, finding by clear and convincing evidence that Baker is a sexually violent predator. Order filed 5/15/09. Pertinent to Baker's current challenge to his SVP status, we summarize the evidence presented to Judge Ebert as follows:

In order to perform the SVP assessment, Hays reviewed documents pertain-

---

(b) ASSESSMENT.—Upon receipt from the court of an order for an assessment, a member of the board as designated by the administrative officer of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:
(1) Facts of the current offense, including:
(i) Whether the offense involved multiple victims,
(ii) Whether the individual exceeded the means necessary to achieve the offense,
(iii) The nature of the sexual contact with the victim,
(iv) Relationship of the individual to the victim,
(v) Age of the victim,
(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime,
(vii) The mental capacity of the victim.
(2) Prior offense history, including:
(i) The individual's prior criminal record,
(ii) Whether the individual completed any prior sentences,
(iii) Whether the individual participated in available programs for sexual offenders.
(3) Characteristics of the individual, including:
(i) Age of the individual,
(ii) Use of illegal drugs by the individual,
(iii) Any mental illness, mental disability or mental abnormality,
(iv) Behavioral characteristics that contribute to the individual's conduct.
(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.
42 Pa.C.S.A. § 9795.4(b).

28. A "mental abnormality" is a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." Id.

29. A "Predatory" act is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." Id.

ing to Baker's current and prior offenses, and considered such information in conjunction with the criteria set forth in Section 9795.4(b)(1)-(4). N.T. 4/20/09 at 23–24, 30–33; Commonwealth's Exhibit 7 at 1. With regard to Baker's current offenses, Hays noted that the pornographic images found in Baker's possession involved multiple child victims, but that Baker did not exceed the means necessary to achieve the offense, did not display unusual cruelty during the commission of the crime, and there was no actual contact or relationships with any of the victims. Commonwealth Exhibit 7 at 5.[30] Hays also reviewed Baker's prior offense history, noting that he had a prior conviction for disorderly conduct involving lewd and lascivious behavior in 1997, and a prior conviction for the sexual abuse of children in 2001. *Id.* Hays further noted that Baker had completed his sentence for the sexual abuse of children offense on September 1, 2006. *Id.* Although Baker had participated in a sexual offender treatment program, Hays indicated that Baker had been expelled from the program after only two weeks for noncompliance with attendance require-

ments.[31] *Id.* at 5–6. Hays then evaluated Baker's characteristics, including his age, and lack of drug use or mental illness. *Id.* at 6. Turning to the behavioral characteristics that contribute to Baker's conduct, Hays pointed out Baker's over five year history of involvement with child pornography, and evidence that Baker attempted to solicit adult females in the Philippines to commit sex acts upon children at Baker's direction, while he watched by web cam. *Id.*[32] Finally, as to "Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of re-offense," Hays noted that the factors which suggested that Baker was likely to reoffended included his for possession of child pornography less than four months after completing his prior sentence for a similar offense; his age (under 50); that his multiple victims were strangers to him and were often prepubescent; and that he did not successfully complete treatment. *Id.* As we note below, Hays also indicated that Baker met the diagnostic criteria for the mental abnormality pedophilia, for which there is no cure, increas-

---

**30.** Hays did not have information concerning the mental capacity of the victims. Commonwealth Exhibit 7 at 5.

**31.** The letter from the counseling services notifying Baker's parole officer of his dismissal from the counseling program, which was reviewed by Hays in making his SVP assessment, indicated that Baker's brief two-week enrollment in the program was marked by "resistance, minimization and denial," that Baker should be considered high risk for ongoing sexual offenses. N.T. 4/20/09, Commonwealth's Exhibit 8.

**32.** Three text files were found on Baker's computer indicating that he had sent instant messages to adult women in the Philippines, asking them to procure young girls and to perform sex acts on them at Baker's direction while he watched by web-cam. Appellant's brief at 17; N.T. 4/20/09 at 6–7. The Commonwealth had agreed not to pursue charges

against Baker with regard to these three text files, but Hays had reviewed the files in order to complete the Sexually Violent Predator Assessment Report, and commented and relied on this information when rendering his opinion. N.T. 4/20/09 at 23, 25, 28–30, 33–34; Commonwealth's Exhibit 7. At the SVP hearing, Hays was called to testify regarding his report and the opinions it contained, but not before the Commonwealth had called computer analyst Byran Spease to the stand. During Spease's testimony, Baker unsuccessfully objected to any statements regarding Baker's contact with the Philippine women, and also objected to the admission of the paper transcripts of the texts (Commonwealth's Exhibits 1–3). When Hays took the stand, however, Baker objected neither to the admission of his report, nor to his testimony regarding such information.

ing the likelihood that Baker would reoffend. N.T. 4/20/09 at 29.

Turning to the question of whether Baker suffered from a "mental abnormality"—i.e. a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons," Hays referenced the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, a classification of mental disorders developed and published under the auspices of the American Psychiatric Association. Commonwealth Exhibit 7 at 7. The DSM–IV lists the following diagnostic criteria for pedophilia:

> A. Over a period of at least 6 months, recurrent intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger).
>
> B. The fantasies, sexual urges, or behaviors cause clinically significant distress or impairment in social, occupational, or other areas of functioning.
>
> C. The person is at least age 16 years and at least 5 years older than the child or children in Criterion A.

DSM–IV at 528. Hays opined that Baker suffers from the mental abnormality pedophilia. N.T. 4/9/09 at 24; Commonwealth's Exhibit 7 at 7–8. In reaching this conclusion, Hays found significant Baker's prior offenses, which, coupled with his current offenses, showed a pattern of abusive behavior of over five years. N.T. 4/9/09 at 25–26; Commonwealth's Exhibit 7, at 7. Additionally, Hays noted that Dr. Paula George[33] confirmed the fact that the im-

ages found in Baker's possession depicted prepubescent children, many of whom were pre-school age, being subjected to sex acts including vaginal, anal and oral penetration by adult males or females. Commonwealth's Exhibit 7, at 7. Hays also noted that Baker attempted to solicit adult females in the Philippines to commit sex acts upon children at Baker's direction, while he watched by web cam. *Id.* Hays thus opined that:

> Jeffrey Wayne Baker has demonstrated a pattern of behavior that indicates recurrent, intense sexually arousing fantasies and sexual urges involving sexual activity with a prepubescent child or children, a pattern of behavior that involved seeking, downloading and disseminating child pornography and repeatedly seeking to have others, for the payment of money, obtain and sexually abuse prepubescent female children for him to view by web camera. Based upon this information it is my opinion within a reasonable degree of professional certainty that Jeffrey Wayne Baker meets the DSM–IV–TR criteria for Pedophilia.

*Id.* at 7–8. *See also* N.T. 4/20/09 at 24.

With regard to the predatory nature of Baker's acts, Hays went on to opine that Baker's surfing the internet for child pornography, and his solicitation of adult women to persuade them to sexually abuse children while Baker watched by web cam, all constituted predatory acts, which, as we noted above, are defined at "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." N.T. 4/9/09 at 27–28; Commonwealth's Exhibit 7 at 8.

---

**33.** Dr. George, an expert in child abuse and identifying children's ages, testified for the Commonwealth at Baker's trial. N.T. 7/15/08 at 174–191.

Based upon the evidence and testimony presented at the Sexually Violent Predator Hearing, the trial court found by clear and convincing evidence that Baker was a sexually violent predator. Order filed 5/15/09. Baker's Rule 1925(b) Statement and the Statement of Questions Involved in his appellate brief indicate that he disputes this finding on the grounds that he was "improperly classified as an SVP, in that there was no victim[s], no violence or predatory behavior, and Defendant did not meet the criteria of pedophilia." Pa.R.A.P. 1925(b) Statement filed 1/4/10; Appellant's brief at 7. We review these challenges under the following well-established standard:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a sexually violent predator. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Fuentes*, 991 A.2d 935, 942 (Pa.Super.2010) (*citing Commonwealth v. Geiter*, 929 A.2d 648, 650 (Pa.Super.2007), appeal denied, 596 Pa. 703, 940 A.2d 362 (2007) (quotations, quotation marks, citations and footnotes omitted)). *See also Commonwealth v. Moody*, 843 A.2d 402, 408 (Pa.Super.2004). In challenging his SVP designation, Baker does not contest that he committed a sexually violent offense, nor does he allege that Hays did not *properly consider* the factors enunciated by Section 9795.4(b)(1)-(4). Instead, Baker attacks the SVP determination as unsupported by evidence that there was a victim or victims, and unsupported by evidence of violence or predatory behavior. Appellant's brief at 7. In addition, Baker asserts that he did not meet the criteria for pedophilia. *Id.*

The arguments Baker sets forth in support of these claims are interwoven and confusing. Baker first asserts that Hays relied on the evidence of Baker's messages to the Philippine women to find that he "engaged in past-predatory behavior." Appellant's brief at 17. Baker then asserts that the trial court was "wrong in permitting testimony on the text messages, and even more in error for allowing them into evidence," and that without such evidence, the Commonwealth was left with nothing to show that Baker engaged in "past predatory behavior—a requisite element of being declared a sexually violent predator." *Id.* (no pertinent statutory or case law citation provided). Baker also baldly asserts that "the Commonwealth's use of the three text messages flies in the face of a common sense reading of 9795.4 which begins with the words, 'After conviction,' clearly indicating that the assessment should focus on the instant offense and the victim(s) of that case." *Id.* 18. Baker is entitled to no relief on these allegations for multiple reasons.

Initially, we note that "*past* predatory behavior" is not a "requisite element" for purposes of SVP designation. Instead, the question of predatory behavior is applicable to the extent that as part of the SVP assessment process it must be determined whether an offender suffers from a mental abnormality or personality disorder that makes the offender likely to engage in "predatory sexually violent offenses." Thus, even if the Commonwealth presented no evidence of "past predatory behavior," such omission has no bearing on whether there was sufficient evidence to support Baker's SVP determination.

 To the extent that Baker claims that the trial court was "wrong in permitting testimony on the text messages, and even more in error for allowing them into evidence," such a claim provides Baker no relief for several reasons. First and foremost, although Baker objected to the admission of Commonwealth Exhibits 1–3, and Byran Spease's testimony regarding the messages which were the subject of those exhibits, Baker DID NOT object to the admission of the Sexually Violent Predator Assessment Report prepared by Hays,[34] which addressed the messages, OR to Hays' testimony regarding the messages. N.T. 4/20/09 at 6–7, 23, 25, 28–30, 33–34, 50. Having failed to raise an objection before the trial court, Baker cannot now complain that the trial court erred in admitting the evidence, thus such information is properly before this Court when determining the sufficiency of the evidence supporting an SVP determination. *Commonwealth v. Ratushny,* 17 A.3d 1269 (Pa.Super.2011); Pa.R.A.P. 302(a).

 Additionally, even if raised before the trial court, Baker has waived any allegation that the trial court erred in admitting evidence or testimony because he failed to include such a claim in his court-ordered Rule 1925(b) statement. An allegation of trial court error in this regard is separate from, not subsidiary to, Baker's claims that the evidence presented was insufficient to support his SVP designation.

A defendant such as Appellee may, of course, raise a challenge to the admissi-bility of evidence adduced by the Commonwealth at an SVP hearing; an appellate court may ultimately find such a challenge to be meritorious and that the defendant is entitled to a new SVP hearing. Yet, a challenge to the admissibility of evidence is separate from a sufficiency claim. Indeed, it is improper for a court, when reviewing a sufficiency challenge, to eliminate from its consideration any evidence which it deems to be inadmissible. This court has stated with great precision that in addressing sufficiency of the evidence claims,

> we are called upon to consider all of the testimony that was presented to the jury during the trial, *without consideration as to the admissibility of that evidence.* The question of sufficiency is not assessed upon a diminished record. Where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial.

*Commonwealth v. Smith,* 523 Pa. 577, 568 A.2d 600, 603 (Pa.1989) (emphasis supplied).

*Commonwealth v. Sanford,* 580 Pa. 604, 608–609, 863 A.2d 428, 431–432 (2004) (footnote omitted). *See also Meals,* 590 Pa. at 129 fn. 14, 912 A.2d at 224 fn. 14. Here, Baker did not include an allegation that the trial court erred in admitting evidence and testimony in his Rule 1925(b) statement, and therefore he has waived

---

**34.** We note that the opinion Hays rendered in his report, to a reasonable degree of professional certainty, is itself evidence. *Fuentes,* 991 A.2d at 944–945 (*citing Commonwealth v. Meals,* 590 Pa. 110, 128, 912 A.2d 213, 223 (2006)).

> [A] Board report or opinion that the individual has an abnormality indicating the likelihood of predatory sexual violent of-

fenses is itself evidence. Also, while a defendant is surely entitled to challenge such evidence by contesting its credibility or reliability before the SVP court, such efforts affect the weight, not the sufficiency of the Commonwealth's case.

*Commonwealth v. Feucht,* 955 A.2d 377, 382 (Pa.Super.2008) (citations omitted).

this claim for purpose of appeal. Pa. R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); *Commonwealth v. Priest,* 18 A.3d 1235 (Pa.Super.2011); *Commonwealth v. Jackson,* 10 A.3d 341, 347 fn. 4 (Pa.Super.2010).

As for Baker's claim that "the Commonwealth's use of the three text messages flies in the face of a common sense reading of 9795.4 which begins with the words, 'After conviction,' clearly indicating that the assessment should focus on the instant offense and the victim(s) of that case," Appellant's brief at 18, a simple reading of the statute clearly indicates the exact opposite. The words "After conviction," which appear in the first sentence of Section 9795.4(a), plainly apply to the time frame in which the court must order an SVP assessment. A continued reading of the statute, however, reveals Sections 9795.4(b)(2), 9795.4(b)(3)(iv), and 9795.4(b)(4), which direct that an SVP assessment "shall include" an examination of "Prior offense history," "Behavioral characteristics that contribute to the individual's conduct," and "Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of re-offense,"—none of which, in any way, indicate "that the assessment should focus on the instant offense and the victim(s) of that case" as Baker erroneously asserts.

For all the forgoing reasons, the evidence of Baker's attempts to persuade women in the Philippines to procure children and abuse them at Baker's direction, while he watched by web cam, is properly before this Court for the purposes of determining whether the evidence sufficiently supports Baker's SVP determination. As explained in *Meals,* in reviewing an SVP designation challenge, we must "ex-amine[ ] all the evidence adduced by the Commonwealth, 'without consideration as to the admissibility of that evidence.' " *Meals,* 590 Pa. 110, 129 fn. 14, 912 A.2d 213, 224 fn. 14 (*citing Sanford, supra* ). Thus, in the instant matter, we must view all of the evidence introduced at the SVP hearing—including the entirety of Hays' testimony regarding Baker's contact with the women in question, and the text of Baker's instant messages pertaining thereto—in the light most favorable to the Commonwealth to determine whether the evidence, as a whole, was sufficient to sustain the SVP designation. *Id.* To do otherwise would be to fail to afford the Commonwealth the full effect of its having prevailed upon an issue in the trial court. *Id.*

■ Baker next challenges his SVP designation on the grounds that "Mr. Hays' opinion as to predatory must fall, as there was no actual victim, as the statute requires." Appellant's brief at 17 (*citing* "9795.4 Assessments."). Like his previous claims, this allegation is unclear. Baker does not define the term "actual victim," and such the term is not contained in, much less "required by" the portion of the statute to which he cites. Section 9795.4, as it pertains to "Assessment," merely directs that an SVP assessment "shall include, but not be limited to" an examination the factors set forth in Section 9795.4(b)(1)-(4) (*supra.*). Section 9795.4(b)(1), pertaining to "Facts of the *current* offense," is the only portion of the statute cited by Baker to even contain the term "victim." That Section indicates that the Sexually Violent Predator Assessment shall include an examination of (i) whether the offense involved multiple victims, (ii) whether the individual exceeded the means necessary to achieve the offense, (iii) the nature of the sexual contact with the victim, (iv) relationship of the individual to the victim, (v) age of the victim, (vi) wheth-

er the offense included a display of unusual cruelty by the individual during the commission of the crime, and (vii) the mental capacity of the victim, it is clear that Hays conducted such an examination. 42 Pa.C.S.A. § 9795.4(b)(1)(i)-(vi).

Baker's allegation that his behavior was not shown to be predatory cannot pertain to his *current* offense of possession of child pornography, however. Although the circumstances of the current offense are material to the SVP assessment process, there is no requirement that the instant offense be "predatory." *Commonwealth v. Fletcher*, 947 A.2d 776, 776 (Pa.Super.2008) (*citing* 42 Pa.C.S.A. § 9795.4(b)). Thus, we must interpret Baker's allegation to be that some other portion of "9795.4 Assessments" "requires" that there be an "actual victim." Appellant's brief at 17.

■ Section 9795.4(b)(2) pertains to "prior offense history," and Baker's prior offenses included possession of child pornography. If Baker is suggesting that such a crime is somehow "victimless," we find his position deeply disturbing and clearly wrong. As the Pennsylvania Supreme Court explained in *Commonwealth v. Davidson*, 595 Pa. 1, 938 A.2d 198, 215 (Pa.2007), "each image of child pornography creates a permanent record of a child's abuse, which results in continuing exploitation of a child when the image is subsequently viewed." *Davidson*, 595 Pa. at 36, 938 A.2d at 219. We thus unequivocally reject any contention that the "mere consumption" of pornographic images of children does not constitute the victimization of those children. "The purpose of Section 6312 is plainly to protect children, end the abuse and exploitation of children, and eradicate the production and supply of child pornography." *Commonwealth v. Diodoro*, 601 Pa. 6, 19, 970 A.2d 1100, 1107 (2009) (*citing Davidson, supra* ).

Section 9795.4(b)(3) pertains to the characteristics of an individual not to victims of the individual's crimes. Finally, Section 9795.4(b)(4) pertains to the factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of re-offense. We fail to see how Section 9795.4(b)(4) "requires" an "actual victim" such that it call into question Hays' opinion.

■ We lastly address Baker's allegation that he did not meet the criteria of pedophilia, an argument he supports by claiming that the evidence presented did not show that he had "over a period *of at least six months*, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with prepubescent child or children," as he avers the DSM criteria require. Appellant's brief at 18. We disagree. Baker previously committed the offense of possession of child pornography on June 6, 2001. By March 19, 2002, he was discharged from sex offender treatment, after exhibiting "marked resistance, minimization and denial." Commonwealth's Exhibit 8. The offenses for which Baker was most recently convicted occurred between December, 2006 and February, 2007. As we noted above, the DSM–IV includes in its diagnostic criteria for pedophilia that the subject have "recurrent intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger)," "[o]ver a period of at least 6 months." DSM–IV at 528. Hays opined that Baker's behavior exhibited such fantasies, urges and behaviors, a fact that Baker does not dispute, and concluded that the time frame of events listed above consisted of a period over at least six months. Baker cites no pertinent case or statutory law to persuade us that Judge Ebert committed an error of law in relying on Hays'

conclusion in this regard, and we find no reason to reverse Baker's SVP determination on this ground.

Having concluded that Baker has failed to show that error occurred in his designation as a Sexually Violent Predator for purposes of Megan's Law, we affirm that order. Further, for the reasons stated above, we also affirm Baker's Judgment of Sentence.

Affirmed.