J-S06014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER CALCAGNI | |
| Appellant | No. 1797 EDA 2016 |

Appeal from the Order May 12, 2016
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0003287-2014

BEFORE:  MOULTON, J., RANSOM, J., and FITZGERALD, J.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED JULY 14, 2017**

Christopher Calcagni appeals from the May 12, 2016 order entered in the Northampton County Court of Common Pleas classifying him as a sexually violent predator ("SVP") under the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.41.  We affirm.

The trial court set forth the facts of this case as follows:

> [Calcagni] has a criminal history as far back as 1991 in which he perpetrated sexual offenses against numerous adolescents/teenage women.  In 1991, [Calcagni] plead [sic] guilty to victimizing 5 girls ages 13, 14, 15, and 16. The affidavit of probable cause set forth that all five victims claimed that [Calcagni] had vaginal intercourse with them while they were placed in a juvenile facility known as the Children's Home of Easton. . . . [Calcagni] was a youth care worker employed with the Children's Home of Easton at the time of the offenses.  [Calcagni]

---

[*] Former Justice specially assigned to the Superior Court.

> entered into a negotiated plea to five (5) counts of corruption of minors, one count for each victim. Apparently, there is no other information in the criminal records regarding the 1991 convictions.
>
> In this matter under appeal, [Calcagni] plead [sic] guilty to having vaginal intercourse with a fifteen-year-old girl who was his karate student and the daughter of his friend. The records indicate that there were several separate incidents of intercourse, with [Calcagni] allegedly pressuring the victim by threats of terminating her participation in karate and harming himself should the victim refuse his advances.

Pennsylvania Rule of Appellate Procedure 1925(a) Statement, 7/27/16, at 3-4 ("1925(a) Op.") (unpaginated).

On April 6, 2015, Calcagni entered a negotiated guilty plea to one count each of statutory sexual assault and corruption of minors.[1] The trial court deferred sentencing so that an SVP assessment could be performed.

On August 14, 2015, the trial court held an SVP hearing. At the hearing, Veronique N. Valliere, Psy.D., a clinical psychologist and member of the Sexual Offenders Assessment Board ("SOAB"), testified regarding her assessment of Calcagni. The trial court thoroughly summarized the substance of Dr. Valliere's testimony in its opinion filed with the May 12, 2016 order classifying Calcagni as an SVP, which we adopt and incorporate herein. *See* Trial Ct. Op., 5/12/16, at 2-4.

On January 8, 2016, the trial court sentenced Calcagni to 18 to 48 months' incarceration, followed by 2 years' probation, consistent with the

---

[1] 18 Pa.C.S. §§ 3122.1(b), 6301(a)(1)(ii).

parties' plea agreement. On May 12, 2016, the trial court entered an order classifying Calcagni as an SVP. Calcagni timely appealed to this Court.

On June 16, 2016, Calcagni timely filed a Pennsylvania Rule of Appellate Procedure 1925(b) statement. On July 27, 2016, the trial court filed a Rule 1925(a) opinion in which it primarily relied on the reasoning in its prior opinion.

Calcagni presents the following issues for our review:

1. Did the trial court err in concluding that the Commonwealth presented sufficient evidence to classify [Calcagni] as an SVP where the Commonwealth's expert opinion evidence was inadmissible under the standard for expert testimony in Pennsylvania?

2. Did the trial court err in finding that the weight of the evidence established by "clear and convincing" evidence that [Calcagni] should be classified as an SVP?

Calcagni's Br. at 4 (suggested answers omitted).[2]

A challenge to a trial court's SVP determination is a challenge to the sufficiency of the evidence, for which our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Meals**, 912 A.2d 213, 218 (Pa. 2006). When reviewing a trial court's SVP determination, we must view the evidence in the light most favorable to the Commonwealth and may

---

[2] In its Rule 1925(a) opinion, the trial court found that Calcagni's Rule 1925(b) statement was vague and suggested that his claims should be deemed waived on that basis. 1925(a) Op. at 1-2. Calcagni raised the same two issues in his Rule 1925(b) statement that he raises in the statement of questions involved in his appellate brief, and the trial court addressed each of Calcagni's arguments in its opinions. Therefore, because our review of Calcagni's issues is not hampered, we decline to find waiver.

not re-weigh the evidence or substitute our judgment for that of the trial court. ***Commonwealth v. Prendes***, 97 A.3d 337, 355 (Pa.Super. 2014). The question for the trial court is whether the Commonwealth's evidence establishes that the defendant has a mental abnormality or personality disorder that makes him or her likely to engage in predatory sexually violent offenses. ***Commonwealth v. Brooks***, 7 A.3d 852, 863 (Pa.Super. 2010); ***see*** 42 Pa.C.S. § 9799.12. We will reverse an SVP determination only if the Commonwealth did not present "clear and convincing evidence that each element of the statute has been satisfied." ***Commonwealth v. Baker***, 24 A.3d 1006, 1033 (Pa.Super. 2011), *aff'd*, 78 A.3d 1044 (Pa. 2013).

On appeal, Calcagni asserts that the Commonwealth failed to prove by clear and convincing evidence that he has a mental abnormality or personality disorder that makes him likely to re-offend. ***See*** Calcagni's Br. at 13, 23.[3] We disagree.

First, Calcagni argues that Dr. Valliere's finding that he suffers from "other specified paraphilic disorder to adolescents" was unsupported because she neither reviewed nor discussed Calcagni's personal, professional, or criminal history in the 24-year period between his 1991 and 2015

_____

[3] Calcagni also appears to challenge the admissibility of Dr. Valliere's expert report and testimony. ***See*** Calcagni's Br. at 4, 19, 23. However, Calcagni did not object to the admission of Dr. Valliere's report or testimony at the hearing, so any such challenge is waived. ***See Baker***, 24 A.3d at 1034.

convictions. As the trial court noted, however, Calcagni expressly "waived the opportunity to participate in the [SVP] assessment and also opted not to testify at any of the assessment hearings, where he could have provided such information." Trial Ct. Op., 5/12/16, at 9 n.1; *see Prendes*, 97 A.3d at 359 ("[T]he absence of an interview does not preclude the ability to evaluate the offender's behavior through available history for characteristics similar or dissimilar to the criteria set forth in the law for defining [an SVP].") (quoting **Commonwealth v. Woods**, 909 A.2d 372, 381 (Pa.Super. 2006)).

Second, Calcagni asserts that "there was no evidence to corroborate Dr. Valliere's recitation of the facts underlying his 1991 convictions." Calcagni's Br. at 10. According to Calcagni, although he was initially charged with more serious offenses, he pled guilty to the lesser charge of corruption of minors because "the alleged victims had provided seriously inaccurate information to the police." *Id.* at 24.

At the hearing, Dr. Valliere testified that she reviewed the pre-sentence report from Calcagni's 1991 convictions, which included the allegations of the five adolescent victims. N.T., 8/14/15, at 9; *see* SVP Assessment, 6/16/15, at 1. Dr. Valliere acknowledged that Calcagni pled guilty only to corruption of minors with respect to those victims, but noted that "[t]he offense pattern was strikingly similar" to the instant case. N.T., 8/14/15, at 12-13. She testified that in both the 1991 and 2015 cases, Calcagni demonstrated "a pattern of arousal to adolescents not only in his

behaviors, but in his choices of putting himself in a position of authority with adolescents." *Id.* at 12. We agree with the trial court that Calcagni's bald assertion that the victims' allegations in 1991 were "false" and "unproven" is insufficient to contest the validity of Dr. Valliere's conclusions. *See Prendes*, 97 A.3d at 360 ("[SORNA] does not limit the expert's consideration of information only to that admitted at trial or at the guilty plea proceedings.").

Moreover, despite several continuance requests, Calcagni failed to present any evidence to rebut or impeach Dr. Valliere's testimony regarding his prior convictions. The trial court explained:

> At the conclusion of the Commonwealth's testimony, [defense] counsel requested the opportunity to investigate [Calcagni's prior] criminal record and to call an expert to rebut Dr. Valliere's conclusions. We granted counsel's request and recessed the hearing.
>
> Thereafter, with the agreement of the Commonwealth, we granted several additional continuances to allow [Calcagni] to further investigate the factual record and to present testimony from an expert. After many months, [Calcagni] opted not to make any record in contradiction of Dr. Valliere's findings or present expert testimony to contest Dr. Valliere's conclusions.

1925(a) Op. at 5; *see Prendes*, 97 A.3d at 358 ("Once expert testimony has been admitted, the rules of evidence then place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel[]," who "bears the burden of exposing and exploring "'any weaknesses in the underpinnings of

the expert's opinion.'") (quoting **In re D.Y.**, 34 A.3d 177, 183 (Pa.Super. 2011)).

Based on our *de novo* review of the certified record, the parties' briefs, and the relevant law, and viewing the evidence in the light most favorable to the Commonwealth, we conclude that the trial court correctly determined that Calcagni is an SVP under SORNA. We reach this conclusion for the reasons stated in the trial court's May 12, 2016 opinion, which we adopt and incorporate herein. **See** Trial Ct. Op., 5/12/16, at 1-13.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2017

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   )     NO.. 3287-2014
)
v.                )
)
CHRISTOPHER CALCAGNI,      )
)
Defendant.        )

## ORDER OF COURT

AND NOW, this 12th day of May, 2016, after reviewing the briefs of counsel with regard to Defendant's status as a Sexually Violent Predator, it is hereby **ORDERED** that this Defendant shall be **CLASSIFIED** as a Sexually Violent Predator.

## STATEMENT OF REASONS

### Factual and Procedural History

Christopher Calcagni ("Defendant") was initially charged with Statutory Sexual Assault, Indecent Assault, Endangering the Welfare of Children, and Corruption of Minors.

On April 6, 2015, Defendant entered a negotiated guilty plea to Statutory Sexual Assault and Corruption of Minors – Sex Related. The agreement also included a Sentence Bargain of a one-and-a-half (1.5) to four (4) year sentence, a two (2) year period of state probation, and a lifetime registration under the Sex Offender Registration and Notification Act ("SORNA").

After Defendant admitted to a factual summary which supported the guilty plea, the undersigned accepted the Plea Agreement and Sentence Bargain. Sentencing was deferred so that a Sexually Violent Predator ("SVP") assessment could be completed.

Veronique N. Valliere, Psy.D. ("Dr. Valliere"), a member of the Sexual Offenders Assessment Board ("SOAB"), conducted Defendant's SVP assessment. A hearing regarding

Defendant's SVP classification was held before the undersigned on August 14, 2015. During the hearing, Dr. Valliere's SVP Assessment ("Assessment") was entered into evidence without objection as Commonwealth Exhibit 1.

Dr. Valliere testified that her Assessment was concluded on June 16, 2015, without interviewing Defendant, because Defendant refused to be interviewed by the SOAB investigator. Dr. Valliere noted that she reviewed various records and offense information from the current charge, as well as the records maintained by the Clerk of Criminal Court regarding a 1991 conviction. Defendant was arrested in 1988 and charged with Rape, three (3) counts of Statutory Rape, five (5) counts of Indecent Assault, five (5) counts of Indecent Exposure, five (5) counts of Endangering the Welfare of Children, and five (5) counts of Corruption of Minors. At the time of his 1988 arrest, Defendant was a youth care worker for the Children's Home of Easton and the five victims were female residents of the facility - two were 13 years old and the other three were 14, 15 and 16. The criminal complaint alleged that the Defendant had vaginal intercourse with all five victims. The Defendant ultimately plead guilty to five counts of Corruption of Minors and was sentenced to four (4) years' probation on those charges.

Dr. Valliere's testimony also summarized the victim's statements related to the instant charges. Dr. Valliere noted that on July 2, 2013, a 16-year-old girl told police that she had been sexually assaulted by her karate instructor, the Defendant, when she was 15-years-old. The victim was well-known to the Defendant, as he had been the victim's karate instructor for a significant period of time prior to the assault. Defendant and the victim's father were alleged to have been friends. Further, prior to the assault, the victim's father had agreed to provide Defendant with financing, so Defendant could open a karate studio. Allegedly, the Defendant and the victim's father were to be partners in the business venture. Shortly after the victim

2

turned fifteen (15), Defendant told the victim that he was in love with her, asked to be her boyfriend and to have a sexual relationship, which the victim initially refused. However, the Defendant remained persistent and began to threaten the victim by telling her that she could not be a student of his any longer if they did not have sex. The victim told Defendant that "she would 'think about it,' to which [Defendant] replied she 'had better think about it and give him an answer because she would not be a part of the school, take lessons, or see him anymore.'" See Dr. Valliere's SVP Assessment, pg. 2. "She called [Defendant] back the same night and told [Defendant] she would 'do whatever he wanted because she didn't want to lose him.'" Id.

The next day, Defendant picked the victim up at her house, saying he was there to take her to karate but instead, drove her to his apartment where he gave her alcohol to drink. Defendant then started to forcefully kiss the victim, at which point she stated that she "didn't want to do this" and Defendant became upset and told the victim he would kill himself. Id. After Defendant's statement, the victim "just let him do what he wanted" and the Defendant engaged the victim in sexual intercourse. Id.

The following day, Defendant again picked up the victim at her house and took her to his apartment, where she told him she "'wasn't going to do this' and asked [Defendant] to take her home." Id. At which point, Defendant grabbed a large knife from the kitchen and told the victim "if you didn't follow his rules he would have to use a knife." Id. In response, the victim laid on Defendant's bed and they engaged in sexual intercourse again. The victim stated that she had four (4) or five (5) sexual encounters with the Defendant, before she was able to stop the encounters. After the new karate school opened, the victim started taking lessons from Defendant again, which she stopped in November 2012 after Defendant was treating her unfairly. Id.

3

Following a review of all available information, and in consideration of all factors specified under Pennsylvania's Adam Walsh Act, codified at 42 Pa.C.S.A. § 9799.24(d) ("Act"), Dr. Valliere determined, within a reasonable degree of professional certainty, that Defendant meets the criteria to be classified as a SVP.

To summarize Dr. Valliere's support for her determination, she opined that the Defendant has a mental abnormality identified as "Other Specified Paraphilic Disorder to adolescents." In reaching that conclusion, Dr. Valliere relied upon both the current offense and the 1988 offenses involving the sexual assault of multiple adolescent females. Dr. Valliere also noted that the Defendant's arousal to adolescent females is "very longstanding and persistent." As a result, Dr. Valliere considered the Defendant's abnormality to be a "lifetime disorder" that cannot be cured but only managed. Further, Dr. Valliere noted that the Defendant's prior psychological evaluation identified the Defendant as having "sociopathic" personality traits, which "indicated that the Defendant has serious character or personality issues characterized by a disregard for rights of others, rules of society, a lack of empathy and remorse and the ability to exploit and manipulate others." See Dr. Valliere's SVP Assessment, pp. 5 and 6. Further, Dr. Valliere noted that the Defendant's deviate sexual arousal has resulted in repeated victimization with multiple victims. She concluded that he is a recidivist despite prior treatment and his knowledge of legal consequences. Finally, Dr. Valliere noted that his behavior meets the statutory definition of "predatory." Thus, based on all the facts and the Defendant's mental abnormality, Dr. Valliere concluded that the Defendant met all required criteria for his classification as a SVP.

At the conclusion of Dr. Valliere's testimony, the Commonwealth rested. Defendant requested to continue this matter so that he could retain his own expert witness to address the Commonwealth's presentation. Counsel also claimed that Dr. Valliere's summary of the factual

4

predicate of the 1988 offenses, which was a significant factor supporting Dr. Valliere's conclusions, was inaccurate. Counsel wanted additional time to present evidence to contradict Dr. Valliere's testimony as to the factual predicate supporting the 1991 conviction.

We set numerous hearing dates to conclude this record. Each time, counsel requested additional time to obtain witnesses and evidence, with no objection by the Commonwealth. However, on January 8, 2016, the Defendant reaffirmed his guilty plea and was sentenced so that he could be transferred to the Department of Corrections to begin sex offender treatment required for an eventual parole.

Finally, On March 14, 2016, Defendant abandoned his pursuit of an independent evaluation and declined to present any additional evidence. On that date, we granted Defendant's request to submit a brief to close the record in this matter. Defendant filed his brief on March 31, 2016. The Commonwealth filed their Brief in Response to Defendant's Brief Regarding SVP Classification on April 12, 2016. This matter is now ripe for our review.

## Discussion

In Pennsylvania, "the determination of a defendant's SVP status may only be made following an assessment by the [SOAB] and hearing before the trial court." Comm. v. Morgan, 16 A.3d 1165, 1168 (Pa. Super. 2011). The trial court should find that a defendant shall be classified as a SVP if the Commonwealth has presented clear and convincing evidence that each element of the Act is satisfied. See id. The "clear and convincing evidence" standard of proof "has been described as an 'intermediate' test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt." Id. Further, "the clear and convincing standard requires evidence that is 'so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the

5

precise facts [in] issue." Id. (quoting Comm. v. Fuentes, 991 A.2d 935, 941-42 (Pa. Super. 2010) (citations omitted)).

An SVP is defined as a person who, "due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. Further, "after a conviction but before sentencing, a court shall order an individual convicted of a sexually violent offense to be assessed by the [SOAB]." 42 Pa.C.S.A. § 9799.24(a). The SOAB assessment shall include the following statutorily-mandated factors:

(1) Facts of the current offense, including:
    i.    Whether the offense involved multiple victims.
    ii.   Whether the individual exceeded the means necessary to achieve the offense.
    iii.  The nature of the sexual contact with the victim.
    iv.  Relationship to the individual victim.
    v.   Age of the victim.
    vi.  Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
    vii. The mental capacity of the victim.
(2) Prior offense history, including:
    i.    The individual's prior criminal record.
    ii.   Whether the individual completed any prior sentences.
    iii.  Whether the individual participated in available programs for sexual offenders.
(3) Characteristics of the individual, including:
    i.    Age of the individual.
    ii.   Use of illegal drugs by the individual.
    iii.  Any mental illness, mental disability or mental abnormality.
    iv.  Behavioral characteristics that contribute to the individual's conduct.
(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of re-offense

42 Pa.C.S.A. § 9799.24(b).

Moreover, the Superior Court has opined that:

[t]he precise line of inquiry for the [SOAB]'s expert, as well as any other expert who testifies at an SVP hearing, is whether the defendant satisfied the definition of sexually violent predator set out in the statute, that is, whether he or she suffers from a mental abnormality or personality disorder that makes him or her more likely to engage in predatory sexually violent offenses. The salient inquiry to be

6

made by the trial court is the identification of the impetus behind the commission of the crime and extent to which the offender will likely reoffend.

In this context, a "mental abnormality" is a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." Moreover, "predatory" conduct, which is indispensable to the designation, is defined as an "act directed at a stranger or at a person with whom a relationship has been initiated, maintained or promoted, in whole or in part, in order to facilitate or support victimization."

Morgan, 16 A.3d at 1169 (quoting Fuentes, 991 A.2d at 943 (internal citations omitted)).

At the SVP hearing, Dr. Valliere took the stand on behalf of the Commonwealth to present the findings from the Assessment, which found that Defendant should be classified as an SVP. Dr. Valliere, in discussing why Defendant met the first prong of the SVP assessment as prescribed by statute, stated:

[Defendant] is diagnosed with something called Otherwise Specified Paraphilic Disorder. There is sexual arousal that contributes to maladaptation or facilitates victimization. So having an arousal pattern, specifically in this case, to adolescents. He has a disorder that contributed to the victimization of another and disruption in his own life, social, occupational, and internal. His interpersonal functioning, obviously being involved in the criminal justice system is a disruption ... So he has the pedophilic arousal that has created dysfunction in his own life as well as connected to the victimization of another."

Notes of SVP Hearing, pp. 10-11. In discussing what facts she utilized for this determination, Dr. Valliere stated:

[Defendant] sexually assaulted a 15-year-old girl. He did this over a short period of time. He used coercion, threats, manipulations against her, and the offense went on multiple times over time. Additionally, [Defendant] has a conviction related to sexual abuse of minors early in his career. So that would show a persistence of attraction to adolescents and a persistent recidivism risk in that he put himself in a situation to be charged, convicted, and treated for sexual abuse of minors and then recidivated with this particular victim. He shows a pattern of arousal to adolescents not only in his behaviors, but in his choices of putting himself in a position of authority with adolescents despite his conviction. So he shows a preferential to the choosing of adolescents despite the legal, social, and occupational consequences of this arousal.

7

Notes of SVP Hearing, pp. 11-12. Additionally, Dr. Valliere found Defendant to have acted with predatory behavior, stating that "he established and pursued a relationship with this last victim and he knew her prior. He began to establish a secret secondary relationship where the adult and caretaker role was abdicated in order for him to facilitate victimization of this victim, thereby completing the statutory definition of predatory behavior." Notes of SVP Hearing, p. 13.

In analyzing the factors prescribed by the statute, Dr. Valliere testified that:

To look at the method by which [Defendant] offends and possible other arousal patterns regarding multiple victims; the particular offenses of a single victim over time with recorded repeated assaults, five other validations involving victimization. And in that instance, some risk-taking assaulting girls in a treatment facility. He didn't use excessive force to gain compliance from the victim, however, when the victim reported that when she tried to stop the offense, he threatened to kill himself and had a knife present, so the victim was intimidated, but excessive force was not used directly.

The prior allegations included threat of power, his own suicide, and other things to control the victim. The nurturing of the sexual act was vaginal penetration and other indecent sex acts of the victim. [Defendant] was a teacher to the victim and a friend of the family, as well as caretaker in a residential environment with the other victims.

There is nothing to suggest that there is unusual cruelty in the crime or that the victim was physically vulnerable or psychologically compromised, though in a developmental way, she was vulnerable emotionally given some of how she explained her low self-esteem and socialization, things like that.

His prior record I looked at, and obviously his past allegations, convictions, and probation suggests he had sexual problems with adolescents in the past. He apparently completed a probation sentence, but I did not have his record, so I have no way of knowing if he was compliant with that or not, or how supervisible he is in the community, which are the factors to look at.

His presentence investigation suggests that he received treatment. Although he was not in a sex offender specific treatment, he received treatment for his prior crime. I can't comment on the nature of that, but I can say that following legal consequences, a conviction, probation, and treatment, he put himself in a position to sexually assault another child which suggests drive and motivation to be in that position. His own acts dictate that his personality and sexual arousal patterns are well-established. There is nothing in the offense information to suggest that he

8

used drugs or alcohol in his offense behavior, though he used alcohol, gave the victim alcohol, prior to his first offense, which suggests use of disinhibiting agents on the victim to make the victim more vulnerable. I talked about the diagnostic criteria, and I also saw evidence of possible personality pathology for [Defendant]. I did not assess that myself because I had no interview.

Notes of SVP Hearing, pp. 13-18.

Dr. Valliere determined to a reasonable degree of professional certainty, taking all factors into consideration, that Defendant meets the statutory criteria for classification as a SVP. Further, she stated that Defendant is a risk to reoffend because "he's a recidivist, so he's obviously proven his ability to recidivate. Secondly, his disorder and repeat action on that disorder ... that makes him predisposed to future acts of sexual aggression." Notes of SVP Hearing, p. 18.

Defendant's attack on Dr. Valliere's assessment is twofold. First, he complains that her diagnosis of a Paraphilia Not Otherwise Specified disorder requires "comprehensive view of records over a substantial period of the offender's lifespan," but her Assessment made no reference or did not discuss any facts between Defendant's convictions (1991 - 2016). However, Defendant is mistaken in his assertion that Dr. Valliere needed to investigate or obtain the Defendant's history or behavior during the years between Defendant's convictions.[1] Dr. Valliere's conclusion that Defendant has a long standing disorder is supported by similar convictions for similar sex offenses twenty-five (25) years apart. We find Dr. Valliere conclusion to be reasonable and credible on the first prong of the Assessment.

Secondly, Defendant attacks Dr. Valliere's finding related to the second prong of the analysis, the risk or likelihood of reoffending, by stating that there was no testimony to corroborate Dr. Valliere's recitation of the underlying facts regarding the 1991 conviction and

---

[1] Defendant ignores the fact that he waived the opportunity to participate in the assessment and also opted not to testify at any of the assessment hearings, where he could have provided such information.

9

the nature of the relationships between Defendant and those victims. Further, the Defendant complains that additional records, beyond those relied upon by Dr. Valliere, could not be found. However, the Defendant presented no evidence or testimony to contradict Dr. Valliere.[2] Finally, Defendant again complains that Dr. Valliere based her conclusion that: Defendant will likely reoffend on convictions for sexual offenses that are separated by twenty-five (25) years; Dr. Valliere did not interview the Defendant; and, Dr. Valliere presented no additional information regarding Defendant's personal, professional, or criminal history.

The Pennsylvania Superior Court rejected similar arguments in Commonwealth v. Fuentes, 991 A.2d 935, (Pa. Super. 2010). In Fuentes, the Superior Court held that the likelihood to reoffend must be analyzed with an "any actuarial instrument to predict risk." Id. at 944. Further, the risk to reoffend "is not an 'independent element' of the SVP determination, but rather, is one factor to be considered when making such an assessment." See Morgan. 16 A.3d at 1173. The evidence in this case, provided by the Commonwealth, clearly establishes that Defendant has the risk to reoffend. Defendant pled guilty in 1991 to Corruption of Minors following allegations of Rape, Statutory Rape, Indecent Assault, Indecent Exposure and Corruption of Minors. Although Defendant accepted a Plea Agreement to a substantially lesser charge, Defendant still admitted to the facts presented which involved the sexual abuse of minors. Thereafter, on April 6, 2015, Defendant pled guilty to Corruption of Minors – Sex Related and Statutory Sexual Assault. It is apparent that the Defendant continues to struggle with and is unable to control his attraction to adolescence females.

The aforementioned guilty pleas are enough to determine that Defendant is at risk to reoffend, as he has clearly reoffended since the 1991 guilty plea for Corruption of Minors. As

---

[2] We note that Defendant was represented by the same attorney for the 1991 guilty plea, the 2016 guilty plea and this SVP Hearing.

10

Dr. Valliere stated, "he's a recidivist, so he's obviously proven his ability to recidivate. Secondly, his disorder and repeat action on that disorder ... that makes him predisposed to future acts of sexual aggression." Notes of SVP Hearing, p. 18.

Finally, the Defendant takes offense that Dr. Valliere testified as to the 1988 offenses by her reliance on the original police report from the City of Bethlehem. Apparently, the defendant wants to baldly claim that those records are inaccurate, given the negotiated plea to only corruption of minors. However, this very claim was already addressed by the Pennsylvania Superior Court in Commonwealth v. Prendes, 97 A.3d 337 (Pa. Super. 2014). In Prendes, the Honorable Michael J. Koury's permitted Dr. Valliere to testify about the facts of the underlying offenses, which were more detailed than the summary contained in the guilty plea transcript. The Superior Court held that:

> The statute governing the SVP assessment *does not limit the expert's consideration of information only to that admitted at trial or at the guilty plea proceedings.* In fact, the statute requires state, county, and local agencies, offices or entities to provide copies of records and information as requested by the SOAB in connection with an SVP assessment, without limitation on the "admissibility" of that information. See 42 Pa.C.S.A. § 9799.24(c). As a result, it stands to reason that some if not many of the facts necessary to perform the SVP assessment might not have been proven beyond a reasonable doubt. Thus, we hold an SOAB expert opinion falls within the general rules regarding expert witnesses. As such, a SOAB expert's opinion may be based on facts or data that the expert has been made aware of or personally observed so long as experts in the particular field reasonably rely on those kinds of facts or data in forming an opinion on the subject; the facts or data consulted need not be admissible for the expert's opinion to be admitted.
>
> ...
>
> Dr. Valliere was permitted to rely on documents other than just the guilty plea transcript to form her opinion on Appellant's status as an SVP. See Pa.R.E. 703. Although these documents were prepared by other persons, Dr. Valliere attested she had reviewed and relied on numerous written records as part of her assessment, including the arrest warrant, affidavit of probable cause, police reports, charge sheet, statements by the victim, etc. and confirmed that these records are ones typically relied on in SOAB evaluations. See also Pa.R.E. 703,

11

705. Therefore, we hold Appellant's challenge to his SVP status as based on inadmissible hearsay merits no relief.

> Finally, with regard to Appellant's claim that Dr. Valliere's assessment was based on "unproven allegations" contained in documents such as the affidavit of probable cause, etc., Appellant fails to state with specificity which "unproven" facts led to his challenge to the expert report as inadmissible. Appellant's general hearsay objection to the assessment was insufficient to call into question the integrity of Dr. Valliere's report. See generally Carter, supra at 610 (Concurring Opinion). Thus, the trial court properly considered Dr. Valliere's expert report when determining if Appellant met the criteria for SVP classification.

Comm. v. Prendes, 97 A.3d 337, 360-62 (Pa. Super. 2014), appeal denied, 105 A.3d 736 (Pa. 2014) (emphasis added) (internal citations omitted).

In Prendes, Dr. Valliere relied upon similar records outside the guilty plea, as she did in the instant matter. Further, Defendant has not provided any competing evidence or raised any specific inaccuracies as to the criminal activity of the defendant in 1988 other than to complain that his negotiated plea was only to five counts of corruption of minors. Frankly, a generous negotiated guilty plea does not negate the underlying facts, unless the record supports an acknowledgment by the Commonwealth that their evidence cannot establish specific offenses. Given the entire record in this matter, Dr. Valliere's conclusions are well supported. There is nothing in the record which impeaches her testimony or her opinion.

We found Dr. Valliere's testimony to be credible and her conclusions to be supported by the evidentiary record. Clearly, the testimonial record is free from contradiction or impeachment. Further, the attack by the defendant was not to Dr. Valliere's credentials or by a competing expert report, but merely by a bald claim that the factual history supporting the original charges brought by law enforcement and relied upon by Dr. Valliere is improper, because the Defendant was the beneficiary of a generous negotiated guilty plea and a very nebulous complaint that there might be more to the Defendant's history between 1991 and 2016 that Dr. Valliere does not know about.

12

Thus, while the Commonwealth bears the burden of proof, by clear and convincing evidence, that the Defendant is a sexually violent predator, it is not an impossible burden where the Commonwealth has presented evidentiary support to meet its burden of proof. Here the Commonwealth has presented evidentiary support to meet its burden of proof, especially where the evidentiary support is uncontradicted and unimpeached. For this reason, we find that the Commonwealth has met its burden by presenting clear and convincing evidence that the Defendant should be classified as a SVP.

BY THE COURT:

STEPHEN G. BARATTA, P.J.