J-E02003-22

2023 PA Super 103

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN R. AUMICK, | : | |
| | : | |
| Appellant | : | No. 1529 EDA 2020 |

Appeal from the Judgment of Sentence Entered July 13, 2020
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000184-2019


BEFORE:  PANELLA, P.J., OLSON, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., McCAFFERY, J., and SULLIVAN, J.

DISSENTING OPINION BY DUBOW, J.:                **FILED JUNE 12, 2023**

I respectfully disagree with the Majority's analysis. Since the applicable statute requires the SVP evaluator to consider the "facts of the current offense" and the evaluator did not do so, but only considered allegations that supported sixteen charges the Commonwealth dismissed, the evidence is insufficient to support the trial court's conclusion that Appellant met the criteria to be an SVP.

**A.**

Sometime around November 2017, the Victim, who was fourteen years old, made allegations that when she was six years old, Appellant raped her. In December 2017, a forensic interviewer at the Child Advocacy Center interviewed and videotaped the Victim. The Victim stated that when the Victim

was approximately six years old, Appellant raped and digitally penetrated her as well as exposed himself, made sexually inappropriate comments, and grabbed and touched her buttocks. The Victim indicated that Appellant stopped this behavior when the Victim was eight or nine years old.

Based on these allegations, the police prepared an Affidavit of Probable Cause. On April 30, 2019, the Commonwealth filed Criminal Information No. 184-2019 against Appellant charging him with seventeen sexual offenses: one count of Rape of a Child (F1), one count of Statutory Sexual Assault (F1), three counts of Aggravated Indecent Assault (F1), two counts of Criminal Attempt (F1), one count of Sexual Assault (F2), three counts of Indecent Assault (F3), two counts of Criminal Attempt (F3), one count Corruption of Minors (F3), one count of Indecent Exposure (M1) and two counts of Invasion of Privacy (M2).

On January 8, 2020, when the parties were ready to select a jury, Appellant and the Commonwealth entered into a negotiated guilty plea agreement in which Appellant pled guilty to one count of Corruption of Minors, a felony of the third degree and the Commonwealth *nolle prossed* the remaining sixteen sexual abuse charges. The Complainant and her mother were "okay" with the negotiated guilty plea agreement. R.R. 82.

In Appellant's written guilty plea colloquy, Appellant admitted that "over a six year period [Appellant] engaged in a course of corruption against the minor child, which included sexual touching of her private areas occurring at two separate residences [when the Child was] between the ages of six to

twelve years of age." R.R. 115. Although the Affidavit of Probable Cause and other documents contained allegations that supported the sixteen other and more serious charges of sexual offenses, Appellant did not admit to those allegations. More importantly, the Commonwealth dismissed the charges for the sexual offenses that supported those allegations.

On July 13, 2020, the trial court conducted a sentencing hearing and a hearing to determine whether Appellant met the criteria to be designated as an SVP as set forth in the Sexual Offenses Reporting and Notification Act, 42 Pa.C.S. § 9799.10 *et seq*, ("SORNA II"). At the hearing, the Commonwealth presented its expert from the State Sexual Offenders Assessment Board ("SOAB"), Mary Muscari, Ph.D., who concluded that Appellant met the criteria set forth in SORNA II to be designated an SVP. The trial court accepted Dr. Muscari's conclusion and designated Appellant to be an SVP, making him a lifetime reporter. The trial court also accepted the sentencing recommendation and, after reviewing the Pre-Sentencing Investigation, imposed the negotiated standard guideline sentence of eighteen months to five years' incarceration.

**B.**

When reviewing whether the evidence was sufficient to support an SVP designation, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied. **Commonwealth v. Baker**, 24 A.3d 1006, 1033 (Pa. Super. 2011), (citation

omitted), *aff'd on other grounds*, 78 A.3d 1044, 1052 (Pa. 2013); ***Commonwealth v. Hollingshead***, 111 A.3d 186, 189 (Pa. Super. 2015) (citation omitted). In this case, I conclude that the Commonwealth failed to satisfy the criteria that SORNA II requires an evaluator to consider and, thus, the evidence is insufficient to support the SVP designation.

## C.

SORNA II sets forth the methodology for determining whether a defendant is an SVP. In particular, the legislature authorizes the SOAB to prepare an assessment of the defendant and requires that that assessment include consideration of numerous factors, including the **facts of the current offense:**

> **(b) Assessment.--**Upon receipt from the court of an order for an assessment, a member of the board as designated by the executive director of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. **An assessment shall include**, but not be limited to, an examination of the following:
>
> (1) **Facts of the current offense,** including:
>> (i) Whether the offense involved multiple victims.
>> (ii) Whether the individual exceeded the means necessary to achieve the offense.
>> (iii) The nature of the sexual contact with the victim.
>> (iv) Relationship of the individual to the victim.
>> (v) Age of the victim.
>> (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
>> (vii) The mental capacity of the victim.
>
> (2) Prior offense history, including:

> (i) The individual's prior criminal record.
> (ii) Whether the individual completed any prior sentences.
> (iii) Whether the individual participated in available programs for sexual offenders.
>
> (3) Characteristics of the individual, including:
>
> > (i) Age.
> > (ii) Use of illegal drugs.
> > (iii) Any mental illness, mental disability or mental abnormality.
> > (iv) Behavioral characteristics that contribute to the individual's conduct.
>
> (4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. § 9799.24 (emphasis added).

A review of the factors, however, demonstrates that SORNA II does not authorize an evaluator to substitute allegations for the "facts of current offense," especially when those allegations support charges that the Commonwealth dismisses.

In this case, Dr. Muscari admitted that she relied **solely** on the "allegations" that supported the sixteen charges that the Commonwealth *nolle prossed* to determine Appellant met the SVP criteria. N.T., 7/13/2020, at 20; R.R. at 104-05. In particular, Dr. Muscari agreed that "everything in [her] assessment is based on the **allegations** to which Mr. Aumick did not plead guilty." *Id*. at 20, R.R. at 104. (emphasis added).

Dr. Muscari reasoned that because Appellant pled guilty to Corruption of Minors, it was reasonable for her to consider every accusation, including rape and digital penetration, alleged against him:

Q: He was convicted of touching someone, touching someone in a sexual matter, which as you agreed is touching someone's bottom.

A: Correct.

Q: And because of that you're willing to say I'm going to believe every accusation against and make him into a sexually violent predator?

A: Because he pled to [touching someone's bottom], yes. . .
Q: . . . You'll agree, he did not plea to any intercourse?

A: Correct.

Q: He did not agree to any penetration with penis, finger or anything else.

A: Correct.

R.R. 105-06.

Also troubling about Dr. Muscari's sole reliance on the Victim's allegations is that Dr. Muscari made no effort to evaluate the Victim's credibility in making the allegations. Dr. Muscari did not interview the Victim or even review the video of the Victim's interview at Child Advocacy Center. *Id*. at 20-21; R.R. 104-105. Rather, Dr. Muscari only reviewed the Police Report, Affidavit of Probable Cause, and other hearsay documents that summarized the Victim's allegations. *Id.*

When asked about whether she evaluated a victim's credibility when determining the factual foundation for her conclusions, Dr. Muscari testified that she rarely questions a victim's allegations. N.T. at 25; R.R. 109. In this case, Dr. Muscari admitted that she did not review the Victim's interview at the Child's Advocacy Center because "I can only go by what I read and what

we know . . . by the literature and what we know by sexually offending literature." *Id.* In fact, Dr. Muscari admitted that once a defendant is convicted of a sexual offense, the evaluator will believe all of the allegations that a victim made, even if the allegations are not the basis for the conviction:

> Q: Okay. How do you judge someone's credibility not having. . . had [any] interaction with him whatsoever?
>
> A: What we do base it on is having a conviction.
>
> Q: Okay. So if I am convicted of a simple assault, I may run the risk of the death penalty because I was convicted of an act of violence?
>
> A: No. Because that wouldn't be within the records that I would have.

N.T. at 21; RR. 105.

The trial court, in determining that Appellant is an SVP, acknowledged that it was solely relying on allegations that support charges that the Commonwealth *nolle prossed*, but justified its decision by finding that the evaluator's "consideration of the entirety of the victims' allegations was appropriate and necessary in order to sufficiently assess [Appellant]." Tr. Ct. Op., filed 10/13/2020, at 6.

SORNA II does not authorize the evaluator or the trial court to substitute allegations supporting charges that the Commonwealth dismissed for the "facts of the current offense." The language of the statute is clear and unambiguous that the evaluator "shall" consider the "facts of the current offense."

Additionally, the statute does not allow the trial court to sidestep this statutory mandate by only considering allegations that are "appropriate and necessary in order to sufficiently assess [Appellant.]" *Id*. Since Dr. Muscari did not base her conclusion on the statutory mandate that she consider the "facts of the current offense" and instead relied on the "allegations" underlying the charges that the Commonwealth *nolle prossed* and the trial court accepted this statutory error, the evidence is insufficient to support the trial court's finding that clear and convincing evidence supports Appellant's SVP designation. [1]

## C.

In conclusion, SORNA II requires the sexual offender evaluator to consider the "facts of the current offense." In this case, the Commonwealth's expert failed to do so and instead based her conclusion solely on allegations underlying the charges that the Commonwealth dismissed. Since the trial court found that the expert's conclusion met the requirement that the

_____

[1] It is also undisputed that the allegations that Dr. Muscari relied upon were double hearsay. In other words, Dr. Muscari did not review a statement that the Victim made or even the Victim's interview at the Child Advocacy Center. Rather, Dr. Muscari relied on the police report and Affidavit of Probable Cause that contain the police's summary of the victim's allegations. This reliance on double hearsay appears to violate the due process principles that the Supreme Court expressed in *Commonwealth v. McClelland*, 660 Pa. 81, 233 A.3d 717, 736 (2020), where the Supreme Court held that a court violated a defendant's procedural due process rights when, at a preliminary hearing, a critical stage of the proceedings, held charges over based solely on hearsay. In light of my finding of the insufficiency of the evidence, I need not address whether the sole use of double hearsay at an SVP hearing, a critical stage of the proceedings, violates Appellant procedural due process rights.

Commonwealth prove that Appellant is an SVP by clear and convincing evidence, but the expert's conclusion was not based on the statutory requirement to consider the "facts of the offense," the evidence was insufficient to support the conclusion that Appellant is an SVP. Thus, I would reverse the trial court's designation of Appellant as an SVP.